MINNEHAHA COUNTY, Respondent, *v.* CHAMPION, Appellant.

1. Constitutional Law—Legislative Power—Intoxicating Liquors—Local Option.

   *Territory* v. *O'Connor, ante,* 397, with reference to the validity of the "Local Option Law," followed.

2. Same—Statutes—Construction—Operation.

   Chapter 70, Laws 1887, known as the "Local Option Law," is operative in any city of a county adopting its provisions, notwithstanding such city by its charter had the exclusive power to license and regulate the sale of intoxicating liquors, and such power is recognized, and not permitted to be interfered with by chapter 72, Laws of the same session, this chapter, however, being enacted prior to the "Local Option Law,"

   v.5 DAK.—28

and consisting in an amendment merely to chapter 26, Laws 1879, the general statute authorizing boards of county commissioners to collect licenses for the sale of intoxicating liquors.

(Argued February 21, 1888; affirmed February 21; opinion filed February 19, 1889.)

Appeal from district court of Minnehaha county; Hon. C. S. PALMER, Judge.

*Winsor & Kittredge,* for appellant.

The local option law is unconstitutional. Cooley, Const. Lim. 139; *Barto* v. *Himrod,* 8 N. Y. 483; *State* v. *Weir,* 33 Iowa, 143; *Ex parte Wall,* 48 Cal. 279; *Willis* v. *Owen,* 43 Tex. 41; *Farnsworth* v. *Lisbon,* 62 Me. 451; *Auditor* v. *Holland,* 14 Bush, 147.

In 1871 it was decided in the state of Iowa that such local option statute was unconstitutional. *State* v. *Weir, supra,* citing *Santo* v. *The State,* 2 Iowa, 203; *Geebrick* v. *The State,* 5 Iowa, 492. See, also, *Lammert* v. *Lindwell,* 62 Mo. 183; *State* v. *Field,* 17 Mo. 529; *Rice* v. *Foster,* 4 Harr. 479.

There are decisions holding the other way, but a distinction can be made between them and the cases that we have cited. They only to a very limited extent sustain such statutes. We find that they are almost invariably an overruling or modification of earlier well-considered cases which have given the law largely to this country, and become leading cases. They are quite exceptional. *Fell* v. *State,* 42 Md. 71; *Locke's Appeal,* 72 Pa. St. 491.

Section 1846, Rev. St. U. S., vests the legislative power in the governor and legislative assembly. Section 1 of an act of congress approved July 30, 1886, provides that the legislatures of the territories of the United States now or hereafter to be organized shall not pass local or special laws in any of the following enumerated cases, that is to say:  *  *  *  Regulating county and township affairs. Chapter 70 is in violation of this statute. *Maisze* v. *The State,* 4 Ind. 342; *Meshmeir* v. *The*

*State,* 11 Ind. 482; *Parker* v. *The Commonwealth,* 6 Barr, 507; *State* v. *Parker,* 26 Vt. 357.

Chapters 70 and 72 of the Session Laws of 1887, being both passed at the same session of the legislature, and both in reference to the same subject-matter, must be construed together, if possible, and effect given to each. Sedg. St. & Const. Law, 209; *People* v. *Jackson,* 30 Cal. 427; *Cain* v. *State,* 20 Tex. 355.

Chapter 72, § 1, and chapter 70, § 3, appear to be in conflict, and, unless they can be reconciled so that effect can be given to each, one or the other of them must fall. It is a well-settled rule that where statutes apparently conflict it is the province to reconcile them, if possible, and thus give effect to the entire legislative expression. Can this be done with these two statutes? It seems to us that it can be done, and that effect can be given to both. The statute would then read: "Should a majority of the ballots cast at such election be against the sale, it shall be unlawful for the board of county commissioners of such county to issue or grant a license for the sale of intoxicating liquors in such county; or of any common council or officer of any incorporated town, city, or village in said county to grant or issue any license for the sale of intoxicating liquors, unless said city has a special charter giving it the exclusive authority in the matter of granting licenses for such sales." It seems to us that this is a reasonable interpretation of these two statutes. In the first place, the city of Sioux Falls, or any city having a special charter giving it exclusive power to grant licenses, is taken apart in this matter and all other matters in which *exclusive* power is given to it from the remainder of the county.

The voters of the county at large could say nothing in regard to who shall be the city officers, as to what the city taxes shall be, as to what ordinances or by-laws it may pass, or as to what licenses it may grant. It was not intended by the legislature that the people of the county should control any of its municipal affairs. Now, in the face of these two laws passed at the same session, will this court say that in this one matter, although in all other things appertaining to this municipal gov-

ernment it is recognized as being distinct and apart from the remainder of the county, although in all its other affairs the county, by its voters, can in no way disturb or regulate it, still in this one matter every voter within that city may have expressed himself the other way; that the ones living in the county outside of it, paying none of its taxes, regulating none of its affairs, having no voice in the administration of its peculiar matters, may step in and say: "*We* shall attend to this. We ought not to have any voice in it, but we will regulate your matters. We will cut off from your income what you may desire for the purpose of fixing your streets; of paying your officers, which you have to pay alone; of making your municipal improvements, in which we have to pay not one dollar. We will step in and abrogate this, and thus make taxation heavier upon your citizens, reduce their revenue, and take from you that power, that authority, that right, which your special charter had given you."

Section 6 of this same law further interprets it, and, it seems to us, gives the same construction that we do. Why does not this law say that in addition to the commissioners revoking the licenses, that the city council, where they had granted license, should also revoke? The power to revoke implies the power to grant. Let us see where this would bring us. Supposing the city council of a city having a special charter, with the exclusive power to grant licenses, had in October, 1887, granted a license for one year from that date, how could the county commissioners revoke it? The law also says that where a license is revoked the license money for the time that has not expired shall be refunded. In such a case, would the county commissioners, from the county treasury, refund the money for the unexpired term? Scarcely. These laws are to be construed, if possible, from the reading of the parts of the laws themselves, and then interpreted. Now, does not the very absence of anything in the law that city councils must revoke licenses in counties where the vote has been against license, and that from their city charters they must refund the moneys for the un-

expired terms, show that this law never was intended to apply to municipal corporations having special charters giving them this exclusive power? Then, if it was not, does not the record in this case exonerate the defendant from any liability under the law?

*H. H. Keith, S. E. Young,* and *A. A. Polk,* for respondent.

The local option law is constitutional and valid. Section 4 of the Organic Act declares that the legislative power should extend to all the rightful subjects of legislation not inconsistent with the constitution and laws of the United States. That the territorial legislature has the power to legislate upon all matters of general concern to the people of the territory there can be no question, and that congress invested it practically with the same power of local self-government as is exercised by the states is equally clear.

Every presumption is in favor of the constitutionality of the law, and the courts will declare a law unconstitutional only when it is clearly, palpably, and plainly inconsistent with the provisions of the constitution, and the burden is upon those who assail the act to show that it is repugnant to the constitution. *Morrison* v. *Springer,* 15 Iowa, 304; *Stewart* v. *Supervisors,* 1 Amer. Rep. 238; *Ogden* v. *Saunders,* 2 Wheat. 270; *Fletcher* v. *Peck,* 6 Cranch, 128; *Griffiths* v. *Commissioners,* 20 Ohio, App. A; *Robinson* v. *Schenck,* 102 Ind. 307, 1 N. E. Rep. 698; *State* v. *Cooper,* 5 Blackf. 258; *Clark* v. *People,* 26 Wend. 606; *Morris* v. *People,* 3 Denio, 394; *State* v. *Able,* 65 Mo. 357; *Territory* v. *Farnsworth,* 5 Pac. Rep. 871; Potter's Dwar. St. 64, 65; Cooley, Const. Lim. (5th Ed.) 218; *Wellington, Petitioner,* 16 Pick. 87.

The act in question was a perfect law when it left the hands of the law-makers, mandatory in all its parts, and there is no delegation of legislative power in the provisions of said act. *State* v. *Court of Common Pleas,* 36 N. J. Law, 72, 13 Amer. Rep. 422; *Village* v. *Howel,* 70 N. Y. 286; *Fell* v. *State,* 42 Md. 71, 20 Amer. Rep. 83; *Locke's Appeal,* 72 Pa. St. 491, 13

Amer. Rep. 716; *Com.* v. *Weber*, 14 Bush, 218, 29 Amer. Rep. 407; *State* v. *Wilcox*, 42 Conn. 364, 19 Amer. Rep. 536; *Boyd* v. *Bryant*, 35 Ark. 69, 37 Amer. Rep. 6; *Com.* v. *Bennett*, 108 Mass. 27; *Com.* v. *Dean*, 110 Mass. 357; *Erlinger* v. *Boneau*, 51 Ill. 94; *State* v. *Cook*, 24 Minn. 247, 31 Amer. Rep. 344; *C. W. & Z. R. R. Co.* v. *Commissioners*, 1 Ohio St. 77; *Kane* v. *Commissioners*, 86 N. C. 8; *Bull* v. *Read*, 13 Grat. 88; *Bancroft* v. *Dumas*, 21 Vt. 456; *State* v. *Barker*, 26 Id. 357; *Smith* v. *Janesville*, 26 Wis. 291; *People* v. *City of Butte*, 4 Mont. 179, 47 Amer. Rep. 346; *State* v. *Noyes*, 30 N. H. 279; *Territory* v. *Scott*, 3 Dak. 357, 20 N. W. Rep. 401; Cooley, Const. Lim. (5th Ed.) 146–148.

The courts of many of the states have been called upon to determine more or less directly the validity of the acts of their respective legislatures that are not only similar to the one in question, but like it in every respect. In at least 15 of the states such acts are held to be valid and constitutional, while, so far as we have been able to find, the only states holding a contrary doctrine are Delaware, Iowa, and Texas. The case of *Maize* v. *State*, 4 Ind. 342, cited by appellant, is substantially overruled by *Groesch* v. *State*, 42 Ind. 547. The question involved in *Ex parte Wall*, 48 Cal. 279, is not the same as in the case at bar, and the decision in that case has been greatly modified by subsequent decisions in that state.

In *Locke's Appeal*, 72 Pa. St., the case of *Parker* v. *Commonwealth*, 6 Barr, cited by counsel for appellant, and freely quoted by them, is expressly overruled.

We do not deem it necessary to enter into any argument to show that the act in question is not in conflict with the act of congress passed July 30, 1886. It is neither local nor special in the sense contemplated by congress. It applies to every county in the territory alike, and confers no greater powers or privileges upon one county than another, but is general in its application.

It is claimed that the city of Sioux Falls is not included within the provisions of chapter 70, Laws 1887, by reason of

chapter 72, and that under its charter the city council have the exclusive right to grant license. Upon examination, such construction cannot be rightfully affirmed.

Chapter 72 is an amendatory act, and as such amends section 1, c. 26, Gen. Laws 1879, and therefore becomes a part of the provisions of the general law of 1879. The effect of such amendments is clearly set forth in *People* v. *Sweetser*, 1 Dak. 308. The principle is there clearly enunciated that "an amendment becomes a part of the original act, whether it be the change of a word, figure, or line, or striking out and inserting, or in any way modifying or altering its provisions." And, further, that "the amendment of a statute by a subsequent one operates, as to all acts done subsequently thereto, as though the amendment had been a part of the original statute."

It should also be noticed that chapter 72 of the Laws of 1887 was approved February 15, 1887, and chapter 26 of the Laws of 1879, as so amended, was then in force.

A careful examination of the provisions of the local option law of March 11, 1887, will make it evident that it was the intent of the legislature to make its provisions absolute in all counties in which a majority should vote "against the sale," and to abrogate and repeal all special laws and charters in any way inconsistent therewith. Section 6 provides that "all acts, special or general, so far as they conflict with the provision of this act, are hereby repealed."

It has been suggested by counsel that chapters 70 and 72 are acts *in pari materia*, and as such should be construed together, and effect given to each. This proposition is virtually disposed of by the above considerations, it being amendatory, and what was clearly the legislative intent.

The rule of construction urged can have no application to the acts in question, for the further reasons:

(1) The later act, approved March 11th, covers the whole subject-matter of the antecedent statute, and would repeal all previous statutes, even without an express repealing statute. *People* v. *Sponsler*, 1 Dak. 289.

(2) The rule *in pari materia* does not go to the extent of controlling the language of a statute by the supposed policy of previous enactments, and cannot be resorted to where the language is plain and exact. *Goodrich* v. *Russell*, 42 N. Y. 177; *Ingalls* v. *Cole*, 47 Me. 530.

(3) The rule can only be invoked when the statutes relate to the same identical subject-matter. Sedg. St. & Const. Law, (2d Ed.) 210–212.

(4) These are different sets of laws, intended by the legislature to operate in different counties, and cannot be construed together.

Special give way to general laws when the legislature annexes to the latter a repealing clause abrogating all inconsistent local or special acts. *Bank* v. *Bridges*, 30 N. J. Law, 116; 4 Field's Lawyers' Briefs, 520; *Sloan* v. *State*, 8 Blackf. 361. A special act is repealed by a general act when that appears to have been the purpose of the legislature. *State* v. *Severance*, 55 Mo. 378; *Eichels* v. *Evansville, S. R. Co.*, 78 Ind. 261, 41 Amer. Rep. 561.

It is within the province of the legislature to alter, amend, or repeal a city charter or any part thereof. Section 374, Civil Code; Cooley, Const. Lim. (5th Ed.) 230–232; *City of St. Louis* v. *Allen*, 13 Mo. 400.

TRIPP, C. J. This action is an appeal from the district court of Minnehaha county, from a decree granting an injunction against the sale of intoxicating liquor under the "local option law," and presents many of the questions passed upon in *Territory* v. *O'Connor, ante,* 397, (decided at this term of court.) As to the points so determined, the opinion in that case will govern in this. This case, however, presents this additional question, to-wit: The charter of the city of Sioux Falls gives to the council exclusive power to license and regulate the sale of intoxicating liquors within the city, and it is contended by the defendant that chapter 72 of the Laws of 1887, providing that the amendment therein made shall not apply to cities having the exclusive right to license, must be construed to so far modify the "local

option law" as to make it inoperative in cities having such power by their charters to grant exclusive license. The section relied upon reads as follows: "That section 1 of chapter 26, General Laws of 1879, be amended by adding thereto, 'and *provided, further,* that intoxicating liquors shall not be sold in any quantities in counties where no license is granted by the board of county commissioners, except as provided for in section thirteen of this chapter: *provided,* that nothing in this act shall in any manner interfere with or invalidate any license granted by any city council acting under the authority of a special charter or act granting exclusive authority in the matter of granting licenses for the sale of intoxicating liquors.'" Chapter 72, § 1, Laws 1887.

The section 1, Laws 1879, which is thus amended, makes it unlawful to sell intoxicating liquors in less quantity than five gallons, without having obtained a license as thereinafter provided; and it is thereinafter provided that such application is to be made to the board of county commissioners, and such license "shall be granted by said board if they deem it expedient, and the applicant a proper person to engage in the same." The amendment was approved on the 15th day of February, 1887, and the "local option law" was approved March 11, 1887. Under the law of 1879, as amended by the act of February 15, 1887, the board of county commissioners were given control of licenses within their respective counties, except when, by statute already existing, a city, by special charter, had exclusive authority in the matter; and the object of the statute was to forbid and make unlawful the sale of intoxicating liquors when no license had been granted, to emphasize and make clearer the prohibition of the statute of 1879, in case of refusal to grant licenses by the proper authority.

The amendment is not an independent act. It was expressly made a part of the law of 1879, and, *ipso facto,* upon its passage, and from the date of its approval, it was an integral part of the law as amended. Later on, in the same session, and nearly a month thereafter, the legislature, recognizing the autonomy of

the law amended, and with a clear design to retain its main provisions in force, enacted the "local option law," so called. In some of its features it is directly in antagonism with the law of 1879. It takes absolutely away from the commissioners and council the power to issue license when the county has voted "against the sale," and in other ways, directly and by implication, repeals certain provisions of the former law. That the legislature had the power to expressly repeal any former enactments, whether of another or of the same session of the legislature, can hardly be controverted, and that it did repeal certain of the provisions of the law of 1879 by the enactment of the "local option law" must be admitted. Such being the case, the question is, how much did it repeal? The amendment made by chapter 72, having become a constituent part of the law of 1879, so far as the construction of the conflicting law is concerned, it stands the same as it would have stood if the entire act as amended had been passed at the same time; and in so far as the "local option law" conflicts therewith, it repeals it by necessary implication.

Sections 3 and 6, c. 70, Laws 1887, which provide: "Should a majority of the ballots cast at such an election be 'against the sale,' it shall be unlawful for the board of county commissioners of such county to issue or grant a license for the sale of intoxicating liquors in such county, or for any common council or officers of *any incorporated town, city, or village* in said county to grant or issue any license for the sale of such intoxicating liquors. * * * All acts, special or general, so far as they conflict with the provisions of this act, are hereby repealed,"—are, as admitted, in direct conflict therewith, and must be construed as not only repealing so much of the law of 1879 as is in conflict with it, but as repealing so much of any existing city charter or other special law as would seem to give power to grant licenses contrary to the terms of the later law. This is clearly the meaning and intention of the law. It is true that there are some omissions which the legislature might well have

supplied, and which have furnished material for the ingenious argument of counsel; but the court cannot shut its eyes to the general scope and purpose of the law, which were to allow the locality to deal with this question of police in its own way. It is a power often allowed to be exercised by cities, and sometimes by *quasi* municipal corporations, such as counties and towns. The demand is always necessarily greater for the exercise of such power in the cities and thickly populated centers than in the more sparsely settled portions of the country. Recognizing such fact, it is hardly to be presumed that the legislature intended to allow the people of the country to prohibit an evil that rarely exists, while the people of the city, where such sales are generally made, were not to have any voice in its enforcement, and to be denied its application. Such a construction would render nugatory the effect of such act, and deny its application to the correction of the very evil, and to the class of persons, it was intended to reach. It was intended to apply to the cities. The legislature could not have overlooked the fact that by special charters nearly all the cities have been given exclusive control over the sale of intoxicating liquors; and the words, "all acts, special or general, so far as they conflict with the provisions of this act, are hereby repealed," must have been expressly intended to make the law applicable to the cities as well as to the country. What other special law was in conflict with it? The legislature must have been presumed to have had some law in mind; the words are not presumed to be meaningless; the answer is evident; the meaning of the law is too plain to admit of doubt.

It is true, the legislature might have provided for local option within the city as separate from the country, and have allowed the people of the city to regulate such matters in their own way, without dictation from those living without its limits; but this argument is one to be made to the legislature, not to the courts. We have nothing to do with the wisdom or the propriety of the act drawn in question. We have sufficient to occupy our time in construing and determining the legality of leg-

islation.    We have no doubt as to the construction or the legality of this act, and the judgment of the lower court is affirmed..

All the justices concur, except Thomas, J., not voting.