NORMAN SNEARLEY V. THE·STATE.

No. 1691.   Decided May 5, 1899.

**1.   Occupation Tax in.Local Option District.**

Where a statute imposing an occupation tax upon the sales of intoxicating liquors, as provided in article 5060a, Revised Statutes, has gone into effect before local option is adopted in the county, the tax is enforcible after the adoption of local option in said county. Distinguishing Ex Parte Baines, 39 Texas Criminal Reports, 62.

**2.   Same.**

An occupation tax is not an innovation upon local option, and the Legislature has the right to pass laws requiring parties in local option districts to pay a certain tax for the privilege of selling intoxicating liquors where the sales are for medicinal purposes, and such as were authorized in the local option district, and are made in strict conformity to the local option law. Such an act is not an amendment of nor does it change a single solitary provision of the local option law. The local option law comprehends no right either to obtain a new license or to sell without license, whether upon the part of natural persons or corporations. Overruling on this point Ex Parte Bains, 39 Texas Criminal Reports, 62.

**3.   Same.**

The adoption of local option does not abrogate the right of the Legislature to subsequently pass a law taxing the sale of intoxicants in the local option precinct; and a party, before selling intoxicants for medicinal purposes under provisions of the local option law, must first procure a license as is provided by the law. Article 5060a, Revised Statutes. HENDERSON, J., concurring; DAVIDSON, Presiding Judge, dissenting.

APPEAL from the County Court of Clay.   Tried below before Hon. EMMETT PATTON, County Judge.

Appeal from a conviction for selling intoxicating liquors in a local· option district without first having paid an occupation tax, as required by law; penalty, a fine of $450. We take the following from the brief for appellant as a statement of the issues presented by the case: 1. Was defendant Snearly liable for this occupation tax if he was selling intoxicating liquors in violation of law? 2. Was this occupation tax law in effect in Clay County, Texas, at the time this sale was made? 3. Can an occupation tax be levied on a business prohibited by law?

Bearing upon these questions, it was agreed upon that prohibition was in effect in Clay County, Texas; that the election was held on the 3d day of August, 1897; that the order declaring the result of the election was passed by the Commissioners Court the 18th day of August, 1897.

That defendant since November 1, 1897, and up to the date of the filing had been engaged in the sale of intoxicating liquors, but no evidence was introduced showing such a sale on prescription.

It was proven the occupation tax was levied by the Commissioners Court. That defendant had posted in his place of business an internal revenue license.

*G. F. Thomas, Allen & Allen,* and *F. J. Ford,* for appellant.—The court erred in overruling defendant's motion for a new trial and in arrest of judgment, because the evidence shows that prohibition was voted upon in Clay County, Texas, on August 3, 1897, and the law under which defendant is prosecuted in this case did not go into effect until August 21, 1897, and hence said law does not apply in Clay County.

The court erred in overruling defendant's motion for a new trial, because the evidence shows that defendant did not sell any spirituous, vinous, or malt liquors on prescription, nor for sacramental purposes. But that all sales made by him were in violation of the local option law, which law was shown to be in force in Clay County at the time such sales were made, and if the law under which defendant is prosecuted in this case intended to levy an occupation tax on a business prohibited by a penal statute, said law, in so far as it undertook to levy such occupation, is invalid.

This law did not go into effect until after Clay County had voted on the question of local option, and therefore could not take effect until another election is held in Clay County for the same purpose. Ex Parte Bains, 39 Texas Crim. Rep., 62.

If defendant made the sale as alleged he was guilty of violating the local option law, and he did not sell on prescription, nor did he sell wine for sacramental purposes. If he was guilty of violating the local option law he could not be legally convicted of pursuing an occupation without paying the tax, for no illegal act can be taxed, and if the law attempts to tax it the law is invalid. Barry v. State, 39 Texas Crim. Rep., 240.

If defendant is guilty of violating the local option law, this conviction is illegal and invalid, because it seeks to affix two different penalties to the same offense, which can not be done. Wills. Crim. Stats., art. 20.

*Robt. A. John,* Assistant Attorney-General, for the State.—Appellant's first contention is that the Act of 1897, imposing tax on liquor dealers in local option districts, does not apply to Clay County, and in support thereof, cites Ex Parte Bains, 39 Texas Criminal Reports, 62.

Let us see. The Act of 1897 took effect ninety days from May 21st,

or on August 20th. The election herein was held August 3d, the result declared August 18th, and publication then made for four weeks, after which time local option was in force. Aiken v. State, 14 Texas Crim. App., 142.

In other words the local option law did not begin to operate in Clay County until four weeks from August 18th.

The Act of 1897 operated from August 20th, and was therefore in force when local option took effect, and such local option law was voted upon and adopted by the citizens of Clay County with full knowledge of the Act of 1897, hence the Bains Case does not apply, as contended by appellant, but, on the contrary, clearly sustains the theory of the State that such power of taxation rests with the Legislative body.

Appellant contends that the Act of 1897, in so far as it seeks to impose a tax upon liquor dealers in local option districts, is unconstitutional and void. Acting under section 20, article 16, of the Constitution, the Legislature has enacted our "local option" laws, and in such laws has wisely provided for the sales of liquor in certain contingencies in the local option district. These exceptions have ever withstood the assaults of able and learned counsel, and our local option laws containing these exceptions have always been held by this court constitutional.

Let us examine why the Act of 1897 was enacted. Each Legislature since the passage of the first local option law has levied a tax on liquor dealers generally. There never has been an exception in favor of the dealer in local option districts. It appears, however, that the various tax collectors were under the impression that no tax was levied by law on dealers in local option districts (I mean such dealers as sold only on prescription). Now, to make its meaning more certain and in language not to be misunderstood, the Legislature passed the Act of 1897, specially naming dealers in local option districts.

Has the Legislature ever waived its power to tax sales of liquor when such sales were made for medicinal purposes? Certainly not. The Legislature does not inquire for what purpose the sale is made; it imposes a tax on the business.

Because the Legislature does not have the power to grant license for the sale of liquor generally in local option districts, I take it does not effect its power to tax those sales which are not in violation of the local option law, and hence conclude that such power is only abridged by the local option law, and such power is not in contravention of the provisions of the Constitution cited. Ex Parte Bains, 39 Texas Crim. Rep., 62.

The fact that the dealer pays the tax for pursuing the occupation in a local option district does not relieve him from the punishment prescribed for illegal sales. He would be subject to the local option law as if he had made the sales and not paid the tax.

Appellant contends that the payment of the fine herein would license appellant to pursue such occupation. This proposition is evidently unsound. Had appellant paid the tax before judgment, the prosecution

would be dismissed, but the payment of the fine does not satisfy the tax, nor does the payment of the tax, after judgment, satisfy the judgment. Penal Code, art. 114.

*H. A. Allen* filed an able brief and argument for appellant on the motion for rehearing.

BROOKS, JUDGE.—Appellant was convicted in the County Court of Clay County for selling intoxicating liquors in a local option district without first having paid an occupation tax as required by law.

Appellant, in his first assignment of errors, urges that the indictment does not charge any offense against the laws of this State. The indictment is as follows: "That Norman Snearly, on or about the 17th day of March, 1898, and anterior to the presentment of the indictment, in the county of Clay and State of Texas, after an election had been held in said county by the qualified voters thereof, in accordance with law, to determine whether or not the sale of intoxicating liquors should be prohibited in said county, and said election had resulted in favor of prohibition in said county, and the Commissioners Court of said county had duly made, passed, and entered its order declaring the result of such election, and prohibiting the sale of intoxicating liquors within said county as required by law, and had caused said order to be published in the manner and form, and for the length of time, required by law, did unlawfully engage in, pursue, and follow the occupation of selling spirituous, vinous, and malt liquors and medicated bitters, the said occupation being then and there taxable by law, without first obtaining a license therefor; and the taxes then and there due by him to the said State upon said occupation amounted to two hundred dollars; and the taxes then and there due by him to said county upon said occupation amounted to one hundred dollars; the said taxes due by him to said county having been theretofore duly levied by the Commissioners Court of said Clay County at its February term, A. D. 1898,—against the peace and dignity of the State." The Twenty-fifth Legislature enacted the following law: "Art. 5060a. Hereafter there shall be collected from every person, firm, corporation, or association of persons, selling spirituous, vinous or malt liquors or medicated bitters, capable of producing intoxication, in this State, not located in any county, subdivision of a county, justice precinct, city or town, where local option is in force under the laws of Texas, an annual tax of $300 on each separate establishment, as follows: For selling such liquors or medicated bitters in quantities of one gallon or less than one gallon $300; for selling such liquors or medicated bitters in quantities of one gallon or more than one gallon $300; provided that in selling one gallon the same may be made up of different liquors in unbroken packages aggregating not less than one gallon; for selling malt liquors exclusively, $50. And there shall be collected from every person, firm, corporation, or association of persons, for every separate

establishment selling such liquors or medicated bitters within this State and located within a county, subdivision of a county, justice precinct, town or city, in which local option is in force under the laws, the sum of $200, provided the same shall not be sold in such locality except on prescription and in compliance with the laws governing sales in such localities," etc. Laws 1897, p. 223. It will be seen that the indictment herein is drawn under this article of the Acts of the Twenty-fifth Legislature. The Acts of the Twenty-fifth Legislature went into effect on August 20, 1897. The Commissioners Court of Clay County ordered an election for said county on local option, and the election was held under said order on August 3, 1897. The result of said election was declared on August 18th, and publication of said order was made for four weeks, after which time local option was in force. We have heretofore held that, until the completion of the publication of the order declaring the result of the election in favor of local option had been made for four consecutive weeks, the law is not in force in the precinct or county attempting to adopt it. This being the case, it clearly appears that the Act of 1897, above alluded to, was in force in Clay County prior to the time that local option went into effect in said county. Aikin v. State, 14 Texas Crim. App., 142. It follows, therefore, that local option having been adopted in Clay County subsequent to the time that the occupation tax with reference to local option districts went into effect, the people were apprised of the occupation tax being in force prior to the time that local option went into effect, and hence the occupation tax would be in force in Clay County.

This is not in contravention of the decision of this court in Ex Parte Bains, 39 Texas Criminal Reports, 62, for that decision was rendered upon the theory that the occupation tax complained of by appellant was an innovation and an addition upon the local option law already adopted by the people. In the case at bar the local option law had not gone into effect, as above shown, and did not until subsequent to the taking effect of the occupation tax. Therefore the reasoning of the Bains Case does not apply. But, be this as it may, we can not and do not agree to the conclusions reached in Ex Parte Bains, supra. Judge Davidson, in delivering the opinion of the court, says: "It is shown that the local option law was in effect in the precinct where the relator is alleged to have violated said law at and prior to the time the act of the Twenty-fifth Legislature went into operation. His first contention is that, the local option law being in force in said precinct, the Legislature could not impose new burdens or obligations upon the people of that precinct, pending the operation of said law. This identical question was before this court in Dawson's Case, 25 Texas Criminal Appeals, 670, and this position was held to be well taken. That decision has been followed in Robinson v. State, 26 Texas Criminal Appeals, 82, and Lawhon v. State, 26 Texas Criminal Appeals, 101. In Dawson's Case the court said: 'Our view is that the mandatory Act of April 1, 1887, in each and all of its provisions, was intended to, and does,

operate only in localities which have adopted since it went into
effect, or may hereafter adopt, local option, in accordance therewith,
and that such provisions can not and do not, and were not intended
to, operate in localities which, prior to their going into effect, had voted
upon and adopted the law as it was prior to such mandatory provisions.
Any other view, it seems to us, would invade the constitutional rights of
the people of such localities, and foist upon them a law which perhaps
they never would have adopted; a law with respect to which their
opinion had never been consulted or ascertained; a law enacted, not by
them, but by the Legislature without constitutional right.' " It will
be seen from this excerpt from Dawson v. State, and an examination
of the other two authorities cited on the question, that these decisions
were rendered in cases where an effort was being made to ingraft amend-
ments on the local option law,—upon the old local option law as the
same had theretofore been adopted by the respective counties or pre-
cincts. To the correctness of this we assent, and the decisions upon
the points at issue were clearly within the line of precedents, and in
strict consonance with reason, but dissent from the conclusion reached
in Ex Parte Bains. As in that case, the relator is attempting to get rid
of a tax passed by the Legislature, on the theory that said tax is an in-
novation upon the local option law. We can not agree with this con-
tention. We think the Legislature has a right to pass laws requiring
parties in local option districts to pay a certain tax for the privilege
of selling intoxicating liquors, not in violation of law, as counsel for
appellant in this case seems to contend; but the Legislature has the
right to levy a tax upon the sale of intoxicating liquors as indicated,
under the provisions of the law in question, where said sales are made
in strict conformity to the local option law. Why not? Such a pro-
vision on the part of the Legislature is no amendment of the local option
law. It neither takes from nor adds to said local option law. It no-
where increases or diminishes its penalties, adds to or decreases its priv-
ileges, nor does it change a single, solitary provision of the local option
law. Would it be seriously contended that, if the United States were
to increase the revenue license tax for the retail of intoxicating liquors,
the people of the locality where the local option law was in force could
complain that this was an amendment of the local option law, and there-
fore invalid? We think not. Now we understand that the analogies
do not hold altogether between the Federal and State governments;
yet we say, in this particular instance, they do hold, and that the State
would have equal right to levy a tax or increase the tax as the Federal
government. It has been justly stated "that in case of a conflict be-
tween two parts of provisions, which is not so radical as to require that
one or the other shall be absolutely disregarded, the court will endeavor
to so modify the earlier provision as to bring it in harmony and consis-
tency with the latter. But anyone who contends that the article or
section of the Code is void for repugnance to some other must assume
the burden of showing the repugnance beyond all doubt, and also that

the law so abrogated is older in date than the repealed statute." Black Interp. Laws, p. 364. Again, Mr. Black, in his work on Intoxicating Liquors (section 101), says: "Sometimes, however, a local option law contains an express saving of vested rights; and this, it is held, embraces previously acquired rights to sell by virtue of licenses already taken out and paid for, but comprehends no right either to obtain a new license or to sell without a license, whether on the part of natural persons or corporations." It therefore follows from the above that, since the courts can construe the provision in question in such way as to give effect to both of same, it is the duty of the court to so do; and, as indicated in the last quotation, "the passage of the local option law comprehends no right, either to obtain a new license or to sell without license, whether on the part of natural persons or corporations." Again, in the case of Brown v. State, 4 Southeastern Reporter, 256, Justice Bradford, delivering the opinion of the Georgia court, says that he thinks the local option law in a precinct, where it was adopted in Georgia, "fully prevents the manufacture and sale in the county of Dekalb of intoxicating liquors other than domestic wines. The act does not interfere with the manufacture and sale of domestic wines, and leaves it exactly where it stood under the law prior to the passage and adoption of this act. But, under the general law, before one could retail domestic wines in quantities less than one quart, he would have to obtain a license for that purpose from the ordinary of the county, or some person or body duly authorized to issue licenses. It will be borne in mind, however, that this indictment does not charge complainant in error with having retailed domestic wines in quantities less than a quart without license. The charge is simply that he retailed it, without saying whether he did so with or without license. The court below was of the opinion that this local option act, as applied to Dekalb County, took from all parties the authority to issue licenses in that county to retail domestic wines in less quantities than one quart. We do not think so. We think the same authority exists now as existed before the passage of this act." It will be seen from this quotation that, although Dekalb County had a right to pass, and had really passed, local option, still the authorities had the power to levy a tax, and make the party selling domestic wines pay same. We think this decision is in point on this question.

"Furthermore, repeals by implication are not favored, and will not be decreed unless it is manifest that the Legislature so intended. As laws are presumed to be passed with deliberation, and with full knowledge of all existing ones on the subject, it is but reasonable to conclude that, in passing a statute, it was not intended to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is not only irreconcilable, but also clear and convincing, and following necessarily from the language used, unless the later act fully embrace the subject matter of the earlier, or unless the reason

for the earlier act is, beyond peradventure, removed. Hence every effort must be used to make all acts stand, and, if by any reasonable construction, they can be reconciled, the latter act will not operate as a repeal of the earlier act. It is frequently found that the conflict between the two statutes is apparent only, as their objects are different, and when the language of each is restricted to its own object, they run in parrallel lines, without meeting, or the later act can be construed as a modification of or exception to the earlier one, thus avoiding all conflict between the two." "To effect the repeal of an earlier act, the subject thereof must be treated and both statutes enacted to accomplish the same object." 23 Am. and Eng. Enc. of Law, p. 490 et seq.; United States v. Claflin, 97 U. S., 547; Stockwell v. United States, 13 Wall., 531; Coghill v. State, 37 Ind., 111; Cate v. State, 3 Sneed, 120. An inspection of the two laws before us (that is to say, an inspection of the local option law and its object and an inspection of the license law and its object) clearly shows that they have a different subject and a different object. The local option law was passed by the Legislature in order that localities might have the privilege of preventing the sale of intoxicating liquors, save and except for certain specific purposes. The license law, as passed by the Twenty-fifth Legislature, had for its subject and object the levying of a tax upon the sale of intoxicating liquors, where the same were sold subordinate to and under the strict provisions of the local option law. We can not see any possible conflict between these two statutes, nor do we think that the passage of the local option law abrogates the right of the Legislature to subsequently pass a law taxing the sale of intoxicants in the local option precinct. The right of taxation is inherent in the body politic, and to say that the same is repealed by implication is to do violence both to the spirit and letter of the Constitution, and run counter to the well known rules of statutory construction. In the case of Stone v. Hill, 72 Texas, 540, Judge Gaines, delivering the opinion of the court, said: "But, in construing a statute, the intention of the Legislature is to be considered, and when that intention is evident, though not consistent with the letter of the law, and the literal construction is claimed to create confusion and to work irreparable wrong, the intention should govern." To give the statute under consideration a construction whereby it would be construed as unconstitutional is violative of the local option·law, which is guarantied to the people of Texas; would work irreparable wrong to the State, in depriving the State of a large amount of revenue; and would be tantamount to saying that, when the Legislature guarantied the different localities the right to pass local option, the act according them that right abrogates the right of taxation. We can not agree to this contention, and we hold that the act of the Twenty-fifth Legislature in levying a tax in local option districts upon parties who sell liquor under the provisions of the local option law is not in violation of the local option law itself, but is within the clear light and purview

of the Constitution of this State, and within the legitimate scope and power of the Legislature. See Duncan v. Taylor, 63 Texas, 646.

It follows from the foregoing that whether local option is adopted before or after the passage of the law of 1897, as above indicated, a party, before selling whisky or other intoxicants under the provisions of the local option law, must first procure a license for said sale as provided in the law of 1897. We believe we have heretofore disposed of all the assignments of error, except the fourth and fifth, and we find no error in these assignments. The judgment is affirmed.

*Affirmed.*

HENDERSON, Judge.—I agree to the result reached, and will write my views.

(July 25, 1899.)

DAVIDSON, Presiding Judge.—Entering my dissent from the opinion of the majority of the court, I desire to state a few reasons therefor.

The indictment set out in that opinion is correctly copied from the transcript, and alleges that appellant, in a local option county, pursued the occupation of selling spirituous, vinous, and malt liquors and medicated bitters,—said occupation being then and there taxable by law,—without first obtaining a license therefor, and the tax due the State on said occupation was $200, and that levied by the county was $100. Several grounds were urged in the motion in arrest of judgment.

1. The opinion holds this indictment valid under the Act of the Twenty-fifth Legislature (Laws 1897, p. 223). If the opinion is correct, then, by paying the tax and securing the license in a local option district, any person can sell intoxicating liquors of any character, and in unlimited quantities. The indictment does not undertake to aver the restricted license provided for by said act. If the wording of the act in question means anything, it is that, in local option territory, license may be obtained to sell only on prescription, and in quantities of a quart or less. If the court is correct, it would be unnecessary to aver that the accused was pursuing the occupation of selling such intoxicants upon prescription, and in quantities of a quart or less; and the party may be justified, under the license, in such territory, in selling without restriction as to prescription or quantity. Is this right or wrong? Would the indictment allege selling by wholesale, by the gallon or more, by the gallon or less, by prescription or by retail? It is fundamental in this State that, before a party can be punished, there must be a penal law, created by legislative enactment, authorizing the punishment. The court can not make a crime, nor enforce a punishment, without such penal statute. It is also fundamental that the indictment must charge the offense denounced by the statute. This can not be dispensed with by courts, any more than by legislative enactment. Hewitt v. State, 25 Texas, 722; State v. Horan, 25 Texas Supp., 272; Huntsman

v. State, 12 Texas Crim. App., 619. Article 5060a provides: "There shall be collected from every person, firm, corporation, or association of persons, for every separate establishment selling such liquors or medicated bitters within this State and located within a county, subdivision of a county, justice precinct, town or city, in which local option is in force under the laws, the sum of $200; provided the same shall not be sold in such locality except on prescription and in compliance with the law governing sales in such localities; provided, further, that nothing in this article shall be so construed as to exempt druggists who sell spirituous, vinous, or malt liquors, or medicated bitters capable of producing intoxication, on the prescription of a physician or otherwise in either locality as above set forth from the payment of the tax herein imposed; provided, further, that this article shall not apply to the sale by druggists of tinctures and drug compounds, in the preparation of which, such liquors or medicated bitters are used and sold on the prescription of a physician or otherwise, and which tinctures and compounds are not intoxicating beverages, prepared in the evasion of the provisions of this chapter of the local option law." Article 5060c provides that, where the party desires to take out such license, he shall file with the county clerk his application under oath, which shall designate the place in which he is to engage in the sale of such liquors, and, if in a city or town in which the streets are named and houses numbered, this shall be specified, and it shall further state the quantity,—whether one gallon or more, or one gallon or less; provided that, in the locality where local option is in force, not more than one quart shall be sold at one time, and to the same person. Said application shall also state whether the liquors to be sold are to be drunk on the premises, or to be sold on prescription in local option territory, and the applicant shall pay the collector of taxes of the proper county all taxes due, and shall, in addition, file with the county clerk a bond as required by the succeeding articles of this chapter. Before an indictment can be valid, under this law, for pursuing the occupation in local option territory, it must set out by proper averments the constituent elements of the offense. Now what are these? (1) That local option is in force; (2) the party is selling in such territory on prescription, in quantities of a quart or less, without first having obtained a license for that purpose, and the indictment must aver that the seller is not a druggist selling tinctures and drug compounds which the law authorizes. State v. Duke, 42 Texas, 455; Smith v. State, Id., 464; State v. Clayton, 43 Texas, 410; Woodward v. State, 5 Texas Crim. App., 296. A casual inspection of the indictment will show that none of the legal requirements, except the first, were charged. It should have alleged selling on prescription, and in quantities of a quart or less. Without these averments, the indictment is vicious. The license limits the sale to a quart or less. Therefore a license can not issue authorizing such sale in excess of a quart. A license to sell liquor is the creation of the statute. Selling outside of such statute can not be the subject of license. If the party were to sell in excess

of a quart, an indictment would not lie under this law. Nor can the license issue for selling otherwise than on prescription, as the law only undertakes to require a license for sales on prescription, and in limited quantities as stated. Therefore there would be no authority to require a license. I have made these observations in view of the fact that the court saw proper to hold the indictment good, without averments constituting the offense under the act in question. If the opinion of the court is correct, a party could be punished as well for failure to obtain a license outside this statute as for not procuring it under its terms, and a crime would be thus made by the court, independent of legislative enactment. Having made the offense, the court must also, in addition, create a punishment, as was done in this case. Hewitt v. State, 25 Texas, 722; State v. Horan, 25 Texas Supp., 272; Huntsman v. State, 12 Texas Crim. App., 619.

2. In order to justify an indictment, there must not only be a statute denouncing the crime and affixing a punishment, but that statute must be legal; that is, it must be within the scope of legislative authority. If the Legislature has no authority to create the offense, then, of course, no indictment would lie. If the well-settled rules of legislative and constitutional construction are to be observed, the Act of the Legislature seeking to license the sale of intoxicants in local option territory must be held invalid. Under all the decisions in Texas, local option, when put into operation in a given territory, supersedes and suspends all laws in conflict with it. This question first came before the court in Robertson's Case, 5 Texas Criminal Appeals, 155, and has been followed without a break until the opinion in this case. How local option and license to sell can be in force in the same territory at the same time, I can not understand. It has always been held in Texas that an occupation tax can not be levied, or license issued, authorizing the sale of intoxicants, in localities where such intoxicants have been prohibited. Robertson's Case, 5 Texas Crim. App., 155; Gibson v. State, 34 Texas Crim. Rep., 218; Rathburn v. State, 88 Texas, 281. But, if a license can be issued to sell under the Act of 1897, it can not be done without let or hindrance as to quantity, and outside the restrictions of that statute.

Again, levying a tax and requiring a license in prohibition districts is utterly at variance both with the Constitution and local option laws. Article 16, section 20, of the State Constitution, requires the Legislature to pass laws whereby the people of counties, and named subdivisions of such counties, may from time to time vote to prohibit the sale of intoxicants. In obedience to this, the Legislature passed laws whereby the people of the mentioned territory can every two years vote upon the question of prohibition. This law provides that sale of intoxicants may be prohibited in such territory, except for medicine, and wine for sacramental purposes. Said law limits the manner and means by which such intoxicants can be obtained for medicine; that is, it must be on the prescription of a regular, practicing physician. There is no method

pointed out by the law as to how wine for sacramental purposes shall be obtained. The local option law can only be put into operation by a vote of the people. It is a local option law, and supersedes all laws on that subject in the given territory, and suspends all laws in conflict with its provisions. Among other things, it expressly suspends the license system, and requires the constituted authorities to refund the unexpended portion of the occupation tax paid by the seller who was doing business in the territory at the time of its adoption. Where people have put this law into operation, it is beyond the power of the Legislature to enact any law, general or special, which will modify, abrogate, or impair its force and efficacy. I assert, without fear of successful contradiction, that the Legislature can not repeal the local option law indirectly, by the passage of a general law, which would have that effect by implication. Now, if this license system is to be held valid, then that portion of the local option law with reference to purchasing on prescription would be rendered nugatory by operation of the heavy license imposed. Under the local option law, the citizenship of the affected territory have the right to the benefits of the provisions of such law. They voted it into operation with the exemptions, and the Legislature has not the authority to impose a tax which would deprive them of these benefits or privileges; nor has the Legislature the power to require a license which prohibits the sale of wine for sacramental purposes, nor to impose burdens not contained in the local option law by the enactment of general or special laws.

Now, with reference to the sale on prescription, we find that there is no tax or license required in the local option law, whereas in the act in question there is a tax of $200 for the State and $100 for the county, and if in an incorporated town or city, a further imposition of another $100, as a prerequisite to the sale of any of the intoxicants mentioned for medical purposes. This is a regulation of the sale in such territory, which is tantamount to an absolute prohibition of the sale and purchase of such intoxicants for medical purposes guarantied under the local option law within such territory; and, also, the terms of this statute inhibit the sale of wine for sacramental purposes. Article 5060a limits the right to sell in such localities under such license only on prescription, and further requires that the affidavit which accompanies the application for license shall state that not more than one quart shall be sold at one time and to the same person. This, of course, means on prescription. Article 5060j requires the seller to enter into a bond, by the terms of which he shall not sell except on the prescription of a regular, practicing physician, and in quantities of one quart or less; and, violating this law in this respect, he shall be subject to pay the sum of $250 for every such infraction of said bond. Now, it is clear from the reading of these different statutes that, before a party can sell in a local option territory, he must make application under oath to obtain the required license, stating that it is to be used in a local option precinct, and for the purpose for which such license can issue (that is, it

is to be used in sales on prescription); and the law itself limits the authority to sell under the license for medicine only, and in quantities of a quart or less. It does not stop here. It requires this bond in the sum of $2500, conditioned that no sale can be made, except on prescription of a regular, practicing physician, and imposes a penalty of $250 for every infraction of the bond. Therefore, it is too plain for argument that the application, the license, and the bond limit the right to sell for medicine only on the prerequisite prescription of a physician. The local option law did not require any of these matters, except the prescription. When the intoxicants are sold or purchased as medicine, the license limits the quantity to a quart or less. This is not so under the local option law. The prescription under local option fixes no limit. Now, if the license and the terms of the bond make it penal to sell only on prescription, and prohibit the seller from selling otherwise, then it would be very difficult to conceive how a party could sell wine for sacramental purposes at all. It would be a clear violation of the terms of his license and bond, and subject him to $250 penalty, under the terms of the bond. Hence, we now have a direct clash between the terms of the local option law and this license act, in more than one particular. The two can not stand together. If the license law is valid, then the sale of wine for sacramental purposes is prohibited, the will of the people defeated, and the general law takes the place of the local option law. If the license is valid, it restricts the right of the people in local option territory to buy intoxicants as medicine. The terms of the two acts are inconsistent with each other. Both can not stand. I therefore insist that, if the Act of the Twenty-fifth Legislature can be upheld, it operates as a repeal directly of the local option law in regard to sale of wine for sacramental purposes, and indirectly of the right to purchase intoxicants for medical purposes.

Again, the Act of the Twenty-fifth Legislature can not be put into operation except by a vote of the people on local option. If this proposition is not correct, then the Legislature has authority to create this license system independent of the local option law. No one, I dare say, would assert that the Legislature has the authority to create this tax, or require that this license shall be voted on directly by the people, in the face of the plain provisions of the Constitution. If the Legislature has not the authority to create this act, and authorize the people to vote upon it directly, it is very clear that it can not create the law, and authorize the people to vote upon it indirectly. The Legislature can not do indirectly what it is inhibited from doing directly. If the local option laws were eliminated, then I seriously doubt if my brethren would hold that the people could put into operation this license system in any subdivision of Texas by their votes. As early as State v. Swisher, 17 Texas, 441, this proposition was adjudicated by our Supreme Court; and it has never been questioned, so far as I know, unless by the opinion in this case. When we look at the license act, we find that, as a prerequisite to the requirement of the license to enforce the imposed tax,

the existence of local option is absolutely necessary. Now, then, this being true, it would necessarily follow that the tax can not be levied, nor the license required, unless local option has been adopted. The Legislature, then, has undertaken to put into operation an occupation tax, by a vote of the people on local option in such territory, different in amount from the same character of occupation tax levied in other sections of the State. That this can not be done without a vote on prohibition is placed by the terms of the statute beyond question. If this can not be done without the local option election, it can not be done with it. It must necessarily be true that, if the Legislature could adopt this method of creating an occupation tax in one county different from that in force in another county, they could do so as well without such method. The mere creation of the local option statute does not authorize the Legislature to violate the other plain provision of the Constitution, which requires that such taxation shall be equal and uniform, and that it must be by direct legislation, and not indirectly, through a vote on some other law, local in operation. If they could use one pretext or subterfuge to violate this provision of the Constitution, they could use any number of subterfuges for the same purpose. The violation of the Constitution would then become a question of fertility of resources in the legislative mind, despite the want of authority. Therefore, in my opinion, the Legislature can not use the pretext of the local option law to impose an occupation tax or require a license in the local option territory.

Again, appellant was fined under article 411a of the Penal Code. The punishment imposed under said article applies to persons or associations of persons who engage in the sale of spirituous, vinous, or malt liquors, or medicated bitters, without first having obtained a license therefor under the general law. It has no reference, in my judgment, to this character of case, because here the license can only be issued for the purpose of selling in local option territory on prescription. If this punishment has reference to this character of case, then it takes the place of local option, and is a substitute for it, and therefore repeals it. If a party has violated the local option law, he is punished by a fine of not less than $25 nor more than $100, and by imprisonment in the county jail not less than twenty nor more than sixty days. Under the license Act of 1897, if article 411a applies, he is punished not less than the amount of the taxes due, and not more than double that sum, or imprisonment in the county jail anywhere from ten to ninety days. So the two punishments are entirely different. If the punishment prescribed by article 411a applies, then it follows that the penalty affixed for violating local option ought not to apply. If article 411a must be resorted to for the penalty, then it takes the place of the punishment set forth in the local option law. This law operates only in local option territory. So there is a conflict between the local option statute and the license act, as to punishment. If the license act be valid, then the party violating it must be punished under that act, and not under the local

·option law, because said license and bond prohibit the sale in such ter-·
ritory, except under the authority of the license. It seems to be uni-
versally held that the local option law, being in operation, supersedes
·or suspends all laws in conflict with it. Robertson v. State, 5 Texas
·Crim. App., 155; Boone v. State, 12 Texas Crim. App., 185; Donaldson
v. State, 15 Texas Crim. App., 25; Gibson v. State, 34 Texas Crim. Rep.,
·218; Rathburn v. State, 88 Texas, 281; Ex Parte Lynn, 19 Texas Crim.
App., 293; Robertson v. State, 12 Texas Crim. App., 541; Black, Intox.
Liq., secs. 90-198; Rauch v. Com., 78 Pa. St., 490; Com. v. Mueller, 81
Pa. St., 127; State v. Yewell, 63 Md., 120; Wheeler v. State, 64 Miss.,
462, 1 South. Rep., 632; Young v. Com., 14 Bush, 161; Com. v. Jarrell
·(Ky.), 5 S. W. Rep., 763; 38 Mo., 566; Minnehaha Co. v. Champion, 5
Dak., 433, 41 N. W. Rep., 754; Butler v. State, 25 Fla., 347, 6 South.
Rep., 67. But, if the opinion of the court be the law, this rule is not
·correct, and the local option statute stands subordinate to a license law
which is itself dependent upon said local option statute for its vitality
and operation. This presents this anomalous condition, to wit: The
.superiority of the local option law over prior license laws, and at the
same time its subordination to, or abrogation by, a later license act,
which later act absolutely depends upon local option for its existence.
I do not care to discuss this question. It does not admit of discussion.

Again, the repeal of prohibition in the given territory necessarily
terminates this local option license system. Why? Because it is depend-
·ent upon the local option law for its existence. If valid, the license is
a parasite on prohibition,—lives with its life, dies with its death. Local
option alone justifies its nativity, and furnishes the only excuse for its
·existence. As it comes into being with the adoption of the local law, so
it passes away with its abrogation. Their lives are coexistent. If not,
then the license would continue in operation after the local law had been
abolished. Could this be true? Suppose, six months before the people
·defeated prohibition, the license was obtained to sell in that territory;
what effect would this defeat of prohibition have on the license? The
license being required for one year, would the defeat of prohibition
·operate as a repeal of the license act in the given locality, or would it
·continue in force? Would the licensee be required to sell under his
license only in quantities of a quart or less, and on prescription· of a
physician, while his next-door licensee neighbor would be selling with-
·out reference to prohibtion or physician's certificates? Would the
owner of the license in local option territory be still fettered by its
terms after the repeal of prohibition? If so, would he occupy an equal
position before the law with others who are selling under license inde-
pendent of the local option law? If local option and license in prohi-
bition territory are "on parallel lines," and independent of each other,
as my brethren insist, would it not follow that the license would con-
tinue in operation for the remaining six months after repeal of prohi-
·bition? If not, which license system would be in force in that territory?
Being independent of each other, one would not interfere with the

other. Then would not the license, not being dependent on local option, continue for the year for which it was issued, and not cease with the defeat of prohibition? What would become of the constitutional requirement of equal and uniform taxation? So I am persuaded the dependency of the license law in question on the local option law is too plain for serious discussion, and, being valid, as held by my brethren, must supersede such local option law wherever there is a conflict between them. We only again see that the two laws can not stand together. One or the other must give way. The opinion of the court uses this language in this connection: "Such a provision on the part of the Legislature is no amendment of the local option law. It neither takes from nor adds to said local option law. It nowhere increases or diminishes its penalty, adds to or decreases its privileges; nor does it change a single, solitary provision of the local option law." In the face of the provisions of the two laws, it occurs to me that this is an ill-advised statement. That it does detract from the local option law is evident from its reading. That it increases penalties in local option districts for liquor selling is too plain for discussion, if both laws are sustained. That it does decrease the privileges in local option territory is placed beyond controversy, for if it does not decrease the privileges, then intoxicants can be purchased independent of the license in any quantities on prescription, despite the license and bond; and yet the license itself limits the quantity to a quart or less, and punishes under the bond for selling otherwise than on prescription in quantities of a quart or less, in addition to the other penalties prescribed. These restrictions are not to be found in the local option law, and to say that liquors can be bought on prescription in greater quantities than one quart under this license system, in local option territory, would be a contradiction of the terms of the license, as well as those of the bond. And it prohibits sale of wine for sacramental purposes. The opinion, in this connection, further says: "It is frequently found that the conflict between the two statutes is apparent only, as their objects are different; and, when the language of each is restricted to its own object, they run in parallel lines, without meeting, or the later act can be construed as a modification of or exception to the earlier one, thus avoiding all conflict between the two." Now, two statutes may "run in parallel lines without meeting." Parallel lines do not meet, nor ever at any point coincide. They can never occupy the same territory. They are independent of each other. And the license act could not depend on the local option statute. It must adhere to its own line. If the "lines are parallel," there is no possible conflict between the two statutes, and the license act will stand independent of the local option law. Therefore the local option law would not be a prerequisite to the levying of the tax or the requirement of the license, and it would not be necessary to allege in the indictment that local option existed in the territory where the license was imposed. Again, if the two lines "run parallel," then the party violating either can be punished without reference to the

other, and he can be punished for violating both, without fear of running counter to the provision contained in the bill of rights, that no man shall twice be placed in jeopardy, and a conviction under one law could not be pleaded in bar for the prosecution under the other. But are these statutes on parallel lines? Suppose the later is construed as "a modification of" the former; then what is the effect? Necessarily a change of the former to that extent. But, the opinion of the court being correct, the license can not be obtained until the local option law is put into operation. Now, if this is true, the later law depends upon the former, and the later, if valid, supersedes the former, to the extent of the conflict. I have this to say: If there are conflicts in these two laws, they can not be avoided by construction, and, if the later act modifies the prohibition law in any of its terms, then, under the opinion of the court, to that extent it would operate a repeal; and, in assuming this position, the court must stand upon the proposition that the license is superior to and repeals the local option law, and they must also maintain the further proposition that a general act of the Legislature can be created which supersedes the local option law. Whenever a subsequent law modifies, changes, or abrogates a former law, to that extent a repeal is effected; and if the local option law is thus modified or repealed, in this instance, it is subordinate to the license act. If this is true, then it is necessarily true, by the same course of reasoning, that the same power can repeal by general law every separate provision of the local option law; and thus such local laws could be used as pretexts at the polls for putting into operation laws which the Legislature could not directly create, while by the same vote the local option law could be destroyed by pretense of voting it into life. Again, I propose to dissent from the doctrine that the Legislature by a general law can suspend the operation of the local option law in any territory where the people have put it into operation. It is true, the Legislature may suspend laws; but these are general laws, and do not refer to that character of legislation where the Constitution itself authorizes the people to vote a local law into existence. When such local law is voted into operation, it must remain as voted, despite the general power of the Legislature to suspend laws. Therefore the Legislature can not pass a general law, the operation of which depends upon the vote of the people on a local law, and which has the effect of suspending the very law upon which it depends for existence. In other words, the Legislature can not, by enacting the license system under discussion, suspend in the given territory the local option law. None of the provisions of such local law voted into operation by the people can be infringed by the provisions of a dependent general law by any such roundabout legislation. So I say, under my view of the questions involved in this appeal, the indictment does not only not charge a violation of the Act of 1897, but, if it had, it would not then charge an offense against the law, because the Legislature has no authority to require such tax and license in territory where local option is in force. The license act is dependent on

the local option law,- and therefore void. Holley v. State, 14 Texas Crim. App., 505; State v. Swisher, 17 Texas, 441.

3. There is one other question I desire to notice. It is this: The evidence is insufficient to sustain this conviction. The testimony in this respect is as follows: "From the 1st day of November, 1897, till about the date of the filing of the indictment, the defendant was continuously engaged in the business of selling spirituous, vinous, and malt liquors in Clay County, Texas; but the evidence did not show, nor tend to show, that defendant made any sale of such liquors on prescription, nor for sacramental purposes." It was also agreed that the defendant had a United States internal revenue license. In order to warrant a conviction, under the Act of 1897, for failing to take out the license, the evidence must show that the accused was selling in violation of the license act. If he was selling in quantities exceeding a quart, he would not violate the act in question. Why? Because the license limits the quantity to a quart or less. The punishment for violating an act requiring a license must be predicated upon evidence that the license act was violated, not that some other law was violated. It is admitted that the party was not selling on prescription, but it is nowhere shown, nor is it pretended, that he was selling in quantities of a quart or less; nor is it intimated that the tax was unpaid, or that the license had not been obtained. Suppose he was selling by the gallon or half gallon, or in any quantity in excess of a quart; would it be pretended that he could be punished for a violation of the act in question? I think most clearly not. If the license had been obtained, this conviction could not stand. He is not charged with violating the terms of the license, but with a failure to obtain the license. As before stated, this indictment was drawn, independent, outside, and beyond the terms of the License Act of 1897. The prosecution conceived it to be right, the trial court concurred in the conception that the evidence should be as broad as the averments of the indictment, and my brethren have justified that conception; and we have a case before us of a party mulcted in a fine of $450 under an indictment which does not charge a violation of the law under which he is prosecuted, and by evidence which does not undertake to prove he ever sold in violation of the same.

I have but incidentally discussed that phase of the act which is violative of the Constitution in regard to uniformity of taxation, because I deemed an extended discussion unnecessary. I wish to say, however, that said act is inoperative for that reason. There are other questions of moment not discussed.

CONCURRING OPINION.

(November 10, 1899.)

HENDERSON, JUDGE.—The indictment is objected to on the ground that it fails to set out all of the constituent elements of the offense.

The special objection urged is that it fails to charge that appellant engaged in selling liquor under prescription. While the indictment fails to make this averment directly, it occurs to me that the allegations set out in it sufficiently show this fact. The essential elements of the offense are the sale of intoxicating liquor, or the being engaged in the business of selling intoxicating liquor, in local option territory, under a prescription, without having obtained a license therefor. The indictment substantially charges that appellant was engaged in the occupation of selling intoxicating liquors in certain local option territory (describing it) without having paid the tax levied thereon (giving the amount of the tax on the occupation,—State and county), and without having first procured a license. Only one character of sale of intoxicating liquor is permitted in local option territory, and the tax is levied on this particular character of sale; and the allegation in the indictment that the occupation was pursued in the local option territory, without having paid the tax, and without having procured a license therefor, I think is sufficiently definite as indicating the particular occupation appellant is charged with pursuing. This is not a' case where two or more occupations in regard to selling liquor can be pursued in the given territory, as was formerly the case where the law authorized a sale and license in quantities less than a quart, and a license for selling in quantities of a quart and over, and levied a different tax. Here only one character of sale is authorized, and only one tax is levied; and the allegation that the occupation was pursued in the given territory, with the amount of tax stated, 'and that appellant had no license, includes the idea that he was pursuing the only taxable occupation in said territory,. in regard to the sale of liquor, on which a tax could be levied. There was no danger here that the party was misled as to the particular offense for which he was indicted, and a conviction thereunder would bar another prosecution for the same offense. I think this is in accord with the view announced in the authorities cited in the dissenting opinion. Woodward v. State, 5 Texas Crim. App., 296; Hewitt v. State,. 25 Texas, 722.

It is insisted that the law imposing a tax on the occupation of selling liquor in local option territory is without authority. Of course, if it can be shown that the law in question is violative of any provision of our Constitution, or possibly of some fundamental right outside of the Constitution, then the proposition advanced by my Brother DAVIDSON is unassailable. While this is not an entirely new question, it has not been before this court in its present shape until now. Both Gibson's Case, 34 Texas Criminal Reports, 218, and Rathburn's Case, 88 Texas, 281, were predicated on the law of 1893; and it was simply held that no tax was levied in local option territory by virtue of the Occupation Tax Act of 1893. In Ex Parte Bains, 39 Texas Criminal Reports, 62, the decision was predicated on the idea that the Act of 1897 (see Acts Twenty-fifth Legislature, page 223), levying an occupation tax in local option territory, was operative upon, and changed the status of, the local option

law, after it had been voted on by the people. As authority in support of the opinion, a number of cases were cited, in which the question involved was unquestionably an innovation or change in the local option law in the given territory, after local option had been voted on by the people, and made operative in such territory. As in Dawson's Case, 25 Texas Criminal Appeals, 670, where the Legislature extended the time in which another vote could be taken on prohibition to two years, instead of one year, as theretofore, the court held that this enlargement of time could not be extended to territory where local option was in force at the time the new act went into effect. And see Robinson v. State, 26 Texas Crim. App., 82; Lawhon v. State, 26 Texas Crim. App., 101. Whatever may be said as to the correctness of those decisions, I do not think the doctrine they announce can be applied to the question here presented. True, I agreed to the Bains Case, but the distinction did not then occur to me, as in that case the tax was attempted to be enforced in territory which had adopted local option prior to the passage of the occupation tax act; but such is not the condition in this case. However, as suggested above, I do not believe the Bains Case was correctly decided, as, in my opinion, there is a vast difference in an act which changes the time in which a new vote can be taken in territory where local option has been defeated or carried and an act which proposes to tax the occupation of selling intoxicating liquor in local option territory. The one act is directly operative on the local option law, and the other does not interfere with the law, although it may interfere with the traffic in liquor in the territory in question, by an occupation tax. So much for the status of the law bearing on this subject prior to this case.

Now, if we recur to the clause of the Constitution itself on this subject, it absolutely prohibits all sales of intoxicating liquors; and so careful was the Legislature in enacting a law under this section of the Constitution that the character of vote authorized was in exact accord with the provisions of the Constitution; the kind of ticket prescribed being "For or against prohibition." In a subsequent section it is provided that the vote so taken shall not be construed to prohibit the sale of wines for sacramental purposes, nor alcoholic stimulants in case of actual sickness. Rev. Civ. Stats., arts. 3384, 3385. It was even doubted that the Legislature had power to eliminate such sales, and the question was not settled until the decision in Bowman v. State, 38 Texas Criminal Reports, 14. In that case it was held that by the adoption of said provision of the Constitution it was not intended to interfere with the sale of intoxicating liquors for medicinal purposes, or wine for sacramental purposes. So these matters were left as they existed aforetime. I do not understand that, because the sale of intoxicating liquors as a medicine was eliminated by the prohibition amendment as construed by the courts, this affords a constitutional guaranty of free liquor in such local option territory. Nor do I understand that the constitutional amendment on this subject authorized the Legislature to pass an act

excluding the State from the power to tax any occupation for the sale of liquor that can be legitimately pursued in the given locality; for, if this be so, then it is according special privileges to those who may be inside such territory, not permitted to others who may be outside. Taxation is one of the highest attributes of sovereignty, and, where the occupation is taxable under any circumstances, the burden is upon those who claim that the sovereign has relinquished this right or power to show it. The claim put forth that the tax levied on the sale of intoxicating liquor in local option territory is a thrust at local option, and that the two can not exist together, is a mere pretense. The tax, with the provisions necessary to procure a license, is as much in aid of prohibition as the prescription of a physician; indeed, every regulation which has for its purpose, and which reasonably tends, to confine the sale of liquor for purely medicinal purposes, is a protection to prohibition; and everyone must know, who has lived in prohibition territory, or who is conversant with the history of local option in our State, that without such legislation local option would be a mockery, a delusion, and a snare. If the sale of intoxicating liquors for medicine was not safeguarded by law; if, as is claimed, the citizen has a constitutional guaranty, or an inalienable right, to sell intoxicating liquor in local option territory for medicinal purposes, without any regulation or restraint,—dives, "hop joints," and "blind tigers," already numerous, would be tenfold more so; and then, indeed, would we have that character of prohibition which does not prohibit. The fact that the occupation of selling intoxicating liquors under a license in local option territory can only coexist with local option in such territory is no argument against its validity. No man is forced to pursue an occupation in such territory, and he can not complain although the Legislature may fail to provide some means by which he may recover the tax paid by him in case local option should be repealed.

Nor can it be said that this is class legislation, for the tax equally applies to all persons under the same conditions. I do not understand that the question of the taxation of the sale of wine for sacramental purposes is involved in this case, but, if it was, does that furnish a reason that the law is unconstitutional, or an infringement upon the inalienable right of the citizen? If so, then the same argument would equally apply to territory outside of local option. But I have never heard it contended that it was unconstitutional, or violative of fundamental right, that wine used for sacramental purposes was purchased from those who paid an occupation tax thereon for selling it. In local option territory, as elsewhere, the paying of a tax on an occupation is simply rendering to "Cæsar the things that are Cæsar's." Furthermore, if it be insisted that the Legislature might put the license so high as to prohibit the sale of intoxicating liquors for medicinal or sacramental purposes in local option territory, this argument would equally apply to outside territory, and would equally prohibit the sale in such outside territory for such purposes. The traffic in intoxicating liquors is pecu-

liarly a subject for police regulation, and the courts have invariably upheld such regulation by the Legislature. How far the courts may go we do not understand to be involved in this case, nor is it necessary to decide that question.

As stated before, this is a case of first impression under the Act of 1897 (see Acts Twenty-fifth Legislature, page 223), and there can be no question that the Legislature by this act intended to levy a tax on the occupation of selling intoxicating liquors for medicinal purposes in local option territory. The language is clear and unambiguous, and, in my opinion, the pursuit of this occupation is the pursuing of an occupation made punishable by and embraced under article 411a of the Penal Code, as this article comprehends every occupation on which a tax is levied. The law authorizes the occupation of selling intoxicating liquors for medicinal purposes under certain regulations prescribed by statute, including a prescription by a physician in local option territory; and I can see no reason why the Legislature can not levy a reasonable tax on such occupation, and such a tax neither violates the Constitution nor any inalienable or fundamental right of the citizen.

[NOTE.—Appellant's motion for rehearing was overruled June 2, 1899, without a written opinion.—Reporter.]