## THE STATE v. GREEN H. SWISHER.

See this case for a discussion of the constitutionality of laws which refer to a vote of the people for their approval, before they shall take effect as laws.

Appeal from Hays. It did not appear from the transcript who presided in the Court below.

The Act of the Legislature referred to in the Opinion, was as follows:

An Act regulating and restricting the Sale of Spirituous Liquors.

SECTION 1. Be it enacted by the Legislature of the State of Texas, That from and after the passage of this Act, there shall be no more license issued or granted to any person or firm in this State, authorizing said person or firm to sell spirituous or vinous liquors in less quantity than one quart, from and after the first Monday of August next, unless a majority of the qualified electors shall, at an election to be held for that purpose, as provided in the second Section of this Act, cast their votes in favor of the granting such license.

SEC. 2. That it shall be the duty of the Governor to order an election to be held in each and every county in this State, to determine whether or not the sale of spirituous or vinous liquors in less quantity than one quart, shall be abolished or continued; the said election shall be held on the first Monday in August next, and returns made as in all elections for county officers, and the vote shall be for or against said license, and if upon counting the votes thus cast and returned, there shall be found to be a majority of votes cast for the license, then and in that case license may issue upon proper application, to any person or firm as heretofore, to sell spirituous or vinous liquor in less quantity than one quart, but if a majority of

votes so cast shall vote against the license, then there shall be no more license issued to any person or firm to sell as aforesaid.

SEC. 3.   That in the event of an election being held in any county or counties in this State, in the manner and for the purpose mentioned in the second Section of this Act, and decided in favor of the license, it shall be the duty of the Chief Justice of any county so voting, upon the petition of any fifty persons over the age of twenty-one years, and citizens of said county, to order a second election for said purpose, as directed in said second Section of this Act, at any time after one year from any former election for said purpose, and if at said election a majority of the votes cast shall be found to have been cast against said license, then there shall be no more license granted or issued to any person or firm to sell spirituous or vinous liquors in less quantity than one quart in said county.

SEC. 4.   That any person or firm violating the provisions of this Act shall be guilty of an offence, and be subject to a fine of not less than ten nor more than twenty dollars for each and every offence so committed, recoverable before any Court of competent jurisdiction of the same, and said fine when so collected shall be paid over to the County Treasurer for the use of the county where said offence was committed.

Passed February 11, 1854.

*Attorney General,* for appellant. Legislation to which this Act is supposed to be similar in structure has, within the last two or three years, undergone judicial consideration in many of our sister States, and, I confess, the legislative action to which I allude has been condemned by a majority of the Courts and Judges who have sat in judgment upon it.   The cases to which I refer are Bradley v. Baxter, 7 How. N. Y. Practice Rep. 18, in Livington's Law Magazine for June, 1854 ; Parker v. Com. Penn., 6 Bar. 507 ; Rice v. Foster, 4 Har. 479 ; Johnson v. Rich, 9 Barb. 630 ; The People v. Collins, Sup. Court

of Michigan, in Am. Law Register, August, 1854, and the dissenting opinion of two of the Judges of the Sup. Court of Penn. in Parker v. Com. Penn., Law Journal for March 1848. The opinion of the Supreme Court of Vermont, I understand to be adverse to this train of decisions. Most of the opinions against these Acts are those of bare majorities of the Judges. In the Michigan case there was an equal division of eight Judges. Without feeling that these decisions are at all in point on this occasion, I yet beg to commend to the attention of the Court the dissenting opinion already referred to. Its powerful reasoning and careful review of very many Acts of Congress and of the States, similar in their structure, are well calculated to countervail the arguments and authority of the above cases and to present the question discussed in them, if ever it shall come to us, as *res integra.* We have access to most, if not all, of these majority opinions ; but as they all discuss in the same manner, Acts of precisely the same structure and mode of manufacture, it will be sufficient for my purpose of showing that they are not in point here, to ask the attention of the Court to the case of Bradley v. Baxter, (N. Y.,) in which the others are invoked as authority and as establishing the same proposition. In that case the Act reviewed and adjudged to be unconstitutional, " because it was not passed by the Legislature, but by the people, upon a transfer of the legislative power to them by the body to which the Constitution had confided it," contains in its 10th Section this provision : " The electors shall determine by ballot, at the annual election to be held in November next, whether this act shall, or not, become a law." Here if the election had not been held, or the popular vote taken, the Act would clearly not have become a law, even if we admit the constitutionality of this mode of legislating. The friends of the Act held the affirmative, and were obliged to carry it through the popular ordeal, by the very terms of its creation and existence, or it could never have had any chance of going into effect as to its substantial

provisions. Reject the election, and you destroy the Act, which was by its very terms never to be a law, but upon a certain result of the election.

But what is the structure of our Act in reference to the point discussed in the cases cited above? Its first Section marks a difference between its framing and that of the Acts considered in these cases, which conclusively and palpably distinguishes it from them in the particular upon which the question of their constitutional validity is admitted, on all hands, to turn. "From and after the passage of this Act there shall "be no more license issued or granted to any person or firm "in this State, authorizing said person or firm to sell spiritu- "ous or vinous liquors in less quantity than one quart, from and "after the first Monday of August next, unless a majority of the "qualified electors," &c. Here is a positive and complete self-sustaining prohibition (at least) of the issuance of retail liquor licenses wholly independent of a submission to the people or of the election. Unlike the Acts considered in the cited adjudications, the substantial provision of this clause takes immediate effect from the moment of the passage of the Act; and instead of its being dependent upon the result of a future election for the chance of ever becoming a law, the only possible effect the election could produce on it. would be to arrest the operation, wherever its result might be adverse, of a distinct, mature and perfect legal provision in force long before the election itself, by the law of its existence, could take place. I say, this prohibitory clause was a law in substance, effect and operation, from the passage of the Act. How? Before its passage these licenses could be issued to extend their authority for twelve months from their date; but by this clause they are prohibited from being issued to extend their authority beyond the first Monday of "August next," (1854,) a space of only about six months from the passage of the Act. On that day, (the 7th of August last,) the force and effect of all licenses issued after the 11th February last were to cease. And this is

an operation which the election could by no possibility control, because this operation and effect must have been completed before the election could take place. It is true that the comma, after the word " quart," in the printed copy of this Act, if it were a substantial part of the action of the Legislature, might make nonsense of this clause. But this is evidently the work of the Devil (the printer's,) rather than of the Legislature. The words "from and after the passage of this Act," show when the Act was to take effect, and the attempt to fasten upon the Legislature the absurd intention to use the words " from and after the first Monday of August next " (inconsistent as they are with the former) to express the same purpose, is wholly inadmissible. The first are obviously used for what they import— to give the Act immediate effect; the latter were as clearly intended to bring all licenses (under the control of the Legislature) to a close on the day of an election which was to decide whether any more could ever be issued, thus giving the popular will the means of going into full effect, if adverse to the continuance of the evil, the moment it could be ascertained by election, and cutting off the chance of evading it by taking out licenses for a year just before the election. The first clause of this Act, then, took effect from the moment of its passage, in prohibiting and restricting the issuing of licenses, and must have continued unless arrested by the election. Here, now, is our " distinction with a difference." Our effective clause would have remained, as it was from the beginning, law, if the election had never taken place, while the acts of the other States above referred to, could by their very terms, have had no force or effect, unless imparted to them by the elections. With them, I repeat, the friends of the Acts held the affirmative, and had to carry them at the elections, in order to make them of effect, while the adversaries of the object of our Act held the affirmative at the polls, and had to carry their opposition to it there to stop partially, if not wholly its full force and effect, otherwise certain, fixed, general and

permanent. In truth, the only doubt that can well be enter-
tained as to the constitutionality of any portion of our Act
must rest upon those parts of it which allow the people at the
polls to arrest the operation of a legislative provision of a
most salutary character. Discard the election provisions from
this Act as unconstitutional, if it is insisted on and you leave
the Act in full force, in its great and beneficent purpose of
unlicensing those "sinks of iniquity," those "nursing mothers"
of almost every crime that is perpetrated within our wide bor-
ders ; and this can be done consistently with well settled prin-
ciple, and upon the highest authority. Per C. J. Marshall in
Bank of Hamilton v. Dudley, 2 Pet. 526 : "If any part of the
"Act be unconstitutional, the provisions of that part may be
"disregarded, while full effect will be given to such as are not
"repugnant to the Constitution of the United States or of the
"State." (2 Blackford 8 ; Ely v. Thompson, 3 Marsh. 73.)

Since my argument in this case was printed, I have received
the Jan. No. (1855) of Livington's Law Magazine, containing,
at page 13, the Opinion of the Supreme Court of Vermont, at
the September Term, 1854, in the case of The State of Ver-
mont v. Parkes, delivered by Chief Justice Redfield, upon an
Act more like ours of Feb. 11th, 1854, than any I have seen.
This Act (of Vermont) contains a provision, that it shall take
effect on the second Tuesday of March, 1853, "unless a ma-
"jority of the voters at an election to be held on the 2nd Tues-
"day in February, 1853, shall vote 'No ;' but that, if they do
"so vote, it shall not take effect till Dec. 1853 ;" that is, till
after the next session of the Legislature. The Supreme Court
held this Act to be constitutional and effective, deeming the
condition subsequent, "unless," &c., to be alone invalid, if any
part of the Act were so. The Opinions of the different Courts
upon the effect of the submission of Acts to the people for
ratification or rejection are here reviewed with great discrimi-
nation and learning. This Opinion is commended to the at-

The State v. Swisher.

tention of this Court as decisive of the constitutionality and effectiveness of our Act.

*E. B. Turner*, for appellee. [We found no brief for appellee, but took Mr. Turner's name from the bar docket.—REPS.]

LIPSCOMB, J. A bill was found by the grand jury of Hays county, on the 18th October, 1854, against Swisher for retailing whiskey in a less quantity than one quart, on the 10th day of October, without having a license. To this bill Swisher filed a general demurrer, which was sustained by the Court; and the State appealed.

We are not apprised of the particular grounds of objection to the indictment, on which the Court below based its judgment in sustaining the demurrer, but presume it was on the constitutionality of the Act of the Legislature of the 11th Feb., 1854, regulating and restricting the sale of spirituous liquors. So much has been said and written about this Act of the Legislature, that it has become familiar to every body, especially the profession. We shall, therefore, omit its insertion here. It is known that the prominent objection to its constitutionality is, that it is referred to the voters for its ratification before it becomes a law. This being a mode of legislation not known to the Constitution, and not derived from it, it is supposed to be invalid, and incapable of being enforced as a law.

The question presented is not now of very general interest, as the Act, whether constitutional or not, has been repealed. We shall, therefore, not give to it the elaborate investigation that we would otherwise have felt called on to bestow on it. In several States similar Acts have been passed by the Legislatures thereof, and it is admitted by the Attorney General, that in most of those States, (perhaps all but Vermont,) these Acts have been adjudged by their Courts to be invalid and unconstitutional. We do not propose to examine these decisions, nor

to enquire whether the Constitutions of the several States, where these Acts have been adjudicated upon, are in terms like our own; but will proceed to determine whether the Act under consideration is repugnant, or not, to our own Constitution.

The mode in which the Acts of the Legislature are to become laws, is distinctly pointed out by our Constitution. After an Act has passed both Houses of the Legislature, it must be signed by the Speaker of the House and the President of the Senate. It must then receive the approval of the Governor. It is then a law. But should the Governor veto it and send it back, it can only become a law by being passed again by both Houses, by a constitutional majority. There is no authority for asking the approval of the voters at the primary elections in the different counties. It only requires the votes of their representatives in a legislative capacity.

But, besides the fact that the Constitution does not provide for such reference to the voters, to give validity to the Acts of the Legislature, we regard it as repugnant to the principles of the Representative Government formed by our Constitution. Under our Constitution, the principle of law making is, that laws are made by the people, not directly, but by and through their chosen representatives. By the Act under consideration, this principle is subverted, and the law is proposed to be made at last by the popular vote of the people, leading inevitably to what was intended to be avoided, confusion and great popular excitement in the enactment of laws.

There is no analogy between the Act of our Legislature, and the various Acts of Congress, depending upon a future contingency of a rebellion, insurrection, foreign war, a treaty, or the acts of a foreign power. These do not depend upon the vote of the constituency of Congress, but on a contingency over which they have no control. It is believed, however, that this supposed analogy is the vice of the Opinion of the Court of Vermont.

The Attorney General has suggested that an Act may be unconstitutional in part, and free from that objection as to other parts ; that so much of the Act as refers to the votes for their ratification may be void, and the balance valid. This is certainly true, if the Act was divisible ; if it acted upon different objects. But we do not regard this Act as susceptible of division. Its whole object and action is upon restraining the sale of liquors in less quantities than one quart, and it must all fall together.

The Act being unconstitutional, and the existing laws on the subject of retailing spirituous liquors not being repealed, Swisher was subject to an indictment for retailing without license. If he had any defence, such as having paid the license fee, and was refused license, it should have been set up by him as matter of special defence ; but on demurrer the judgment ought to have been against him, and we would be bound to reverse the judgment and remand ; but the record is so defective that we do not feel authorized to render any other judgment than a dismissal of the appeal.

Appeal dismissed.