Ex Parte J. E. Farnsworth.

No. 875.    Decided March 1, 1911.

1.—Habeas Corpus—City Charter and Ordinance—Telephone Service—Municipal Corporation—Initiative and Referendum—Constitutional Law.

The Legislature is without authority under the Constitution to authorize a city to carry on its affairs as a municipal corporation under the initiative and referendum, as applied to the fixing of telephone rates by an ordinance put in operation by a referendum vote.

2.—Same—Constitutional Law—Petition, Right of.

The people do not by the provisions of Section 27, Article 1 of the Constitution of Texas, undertake the resumption of their latent and inherent or delegated power, but on the contrary provide that they may make known their wishes by assembling themselves together, or by petition, address or remonstrance.

**3.—Same—Initiative—Referendum—Legislation can not be Delegated.**

While Section 27 of Article 1 of the Constitution of Texas may be considered in the nature of a qualified initiative, it does not confer upon the Legislature the authority to inaugurate and put into operation what is known as the referendum; on the contrary it excludes such conclusion and under it legislation cannot be referred to the people for enactment by their vote. Following Swisher v. State, 17 Texas, 441, and other cases.

**4.—Same—Power of Legislation Vested in Legislature—Popular Vote.**

Under the Constitution the people cannot be reinvested by the Legislature with the functions of legislation conferred by them on the Legislature, nor can the Legislature render the enactment of the law dependent upon the acceptance by the people by popular vote. The people in whom the power resided have voluntarily transferred its exercise and have positively ordained that the power of legislation shall be vested in the Legislature.

**5.—Same—Apparent Exception—Local Option Law—Stock Law.**

While the local option law and the stock law, etc., are an apparent exception to the general constitutional rule that the Legislature cannot delegate its legislative power to the people, yet such apparent exception is expressly authorized by the Constitution and, therefore, only emphasizes the general rule.

**6.—Same—Representative Government—Pure Democracy.**

Ours is a representative democracy, that is, it is a republican, representative form of government as contradistinguished from a social or pure democracy, and the transfer of the enactment of laws to the people to be made operative by their votes is directly subversive of our constitutional form of government.

From Dallas County.

Original habeas corpus proceeding asking release from arrest for the violation of a city ordinance.

The opinion states the case.

*A. P. Wozencraft* and *W. S. Bramlett* and *D. A. Frank,* for relator. —Upon the question that the Legislature has no power to vest in the voters of the city authority to initiate and adopt by their votes ordinances regulating the rates of telephone companies: Agua Pura Co. v. Las Vegas (N. M.), 60 Pac., 208, 50 L. R. A., 224.

On the question of such city ordinance being void and unconstitutional: Tel. & Tel. Co. v. Los Angeles, 211 U. S. Rep., 265.

On the question that such ordinance is void because it can not be repealed except by the vote of the people, and the Legislature is without power to vest in a municipality or the voters thereof such legislative function and thereby alienate its legislative power: Horton v. Newport, 61 Atl. Rep., 759; Werner v. City of Galveston, 72 Texas, 22; Johnson v. Martin, 75 Texas, 33; Stanfield v. State, 83 Texas, 317.

Upon the question that the initiative and referendum is contrary to the genius of our institutions and destructive of a republican form of government: State v. Harris (S. C.), 2 Bailey, 598; State v. Swisher, 17 Texas, 441; Dillon Munc. Corp., vol. 1, page 46 et seq.; Origin & Growth of Eng. Const. (Taylor), vol. 1, p. 39.

*James J. Collins* and *Jno. C. Robertson,* for respondent.—On the

question of the initiative and referendum: Johnson v. Martin, 75 Texas, 33; Stanfield v. State, 83 Texas, 317; In re Pfahler, 88 Pac., 270; Cooley on Const. Limitations, 7th ed., p. 95; Kadderly v. City of Portland, 74 Pac., 710; State v. Pacific States Tel. Co., 99 Pac., 427; Ex parte Wagner, 95 Pac., 435; People v. Sours, 74 Pac., 167; City of Dallas v. Western Elec. Co., 83 Texas, 243, 18 S. W. Rep., 552.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—This is an original writ of habeas corpus. Applicant was arrested for violating a city ordinance of the city of Dallas which was put into operation under what is termed the "initiative and referendum" clause contained in the charter of said city. The ordinance in question fixed rates for telephone service. The city charter of Dallas grants authority to the board of commissioners to determine and regulate charges, fix fares and rates of persons, firms and corporations enjoying franchises or other privileges in that city, and to prescribe the service to be rendered. The charter also provides that this "board of commissioners," known as the "city council," shall fix and regulate the rates of water, gas, electric lights, and regulate and fix fares, tolls and charges of local telephones and exchanges. These powers are by the terms of the charter to be exercised by the mayor and the four commissioners, unless otherwise provided. The "initiative and referendum" is also provided for in the charter. When an ordinance has been voted into operation under the referendum clause it is also provided that said ordinance can not be repealed or amended except by a vote of the people. This is a sufficient statement of the case.

We may condense applicant's main contention into one general proposition, to wit: the Legislature is without authority to authorize a city to carry on its affairs as a municipal corporation under what is known as the "initiative and referendum," especially as applied to the fixing of rates, fares, etc. As applicant was arrested for violating the particular ordinance put into operation by the "referendum vote," its validity is the essential basis for his prosecution. Without that ordinance this prosecution could not be had. We find, upon an inspection of the Constitution that the people have reserved to themselves in article 1, section 27, the right, in a peaceable manner, to assemble together for their common good and "apply to those invested with the powers of government" for redress of grievances or other purposes by petition, address or remonstrance. We find by the provisions of section 29 of the same article that all the powers delegated by the Constitution are "excepted out of the general powers of government," and declared to be "forever inviolate," and everything contrary thereto "shall be void." That our citizenship may do the things specified in section 27, supra, is, we think, not to be

questioned inasmuch as they expressly reserve to themselves, and have excepted out of the "general powers of the government" the matters therein specified. Under our theory of government "all power is inherent in the people," as especially set out in article 1, section 2, of the Bill of Rights. The people do not by the provisions of section 27, supra, undertake the resumption of their latent and inherent or any delegated power, but on the contrary provide that they may make known their wishes· by assembling themselves together, or by petition, address or remonstrance. When these matters go unheeded the people are not without ample power to resume their original authority, or control those invested with authority. The Constitution can be amended and changed to suit occasion and their "inherent power" thus exercised. Under the provisions of article 15 of the Constitution the higher State officials may be impeached and ousted from office. At recurring elections the people may set aside official incumbents and invest "the powers of government" in those who will faithfully execute the delegated trust, and instruct legislators for the changing of unjust, oppressive or undesirable legislation. If those "invested with the powers of government" are not included within the rule of impeachment, they may be charged with dereliction, incompetency or corruption and tried before such proper tribunal as is provided by the Constitution or legislation thereunder.

In the way provided in section 27, article 1, and to this extent, the "initiative" may be considered as within the contemplation of the Constitution, but it is not therein provided that the people may resume their original and "inherent power." Such idea is excluded by the language employed in section 27, supra. The resumption of such inherent power is provided for and to be exercised under the terms of article 17 of the Constitution. In article 2 of the Constitution we find it ordained that the powers of government shall be divided into three distinct departments with delegation of power to the Legislature to enact law; and in article 3 these matters of legislation are amplified, and in article 1, section 27, we ascertain how the people make known their wishes to "those invested with the powers of government." All authority in Texas acts from delegated power and is to be controlled in official action by such authority. The people themselves are bound by the Constitution until changed as provided in the instrument itself. In other words, the Constitution furnishes the rule and basis for the action not only of the people who made it, but "those who are invested with the powers of government" under it. While section 27 of article 1 may be considered in the nature of a qualified "initiative" it does not confer upon the Legislature the authority to inaugurate and put into operation what is known as the "referendum." On the contrary, it refutes and excludes such conclusion. Under the terms of. this section legislation can not be referred to the people for enactment by ·their vote. That the referendum is adverse to our constitutional form of government

as a means of putting into operation enactments by the Legislature, has been expressly decided in this State as early as State v. Swisher, 17 Texas, 441. That case has been recognized and followed in subsequent decisions. See 83 Texas, 317, and also 72 Texas, 22. In the last cited case Judge Gaines, writing the opinion, uses this language: "It is a well settled principle that the Legislature can not delegate its authority to make laws by submitting the question of their enactment to a popular vote." These decisions have been followed by this court in its decisions. In Ex parte Massey, 49 Texas Crim. Rep., at page 67, Judge Henderson uses this language: "As early as the case of State v. Swisher, 17 Texas, 441, it was held that the Legislature could not delegate to voters or the people the power to pass laws in the absence of some constitutional provision authorizing this." In the Swisher case, supra, this language is found: "But besides the fact that the Constitution does not provide for such reference to the voters to give validity to the Acts of the Legislature, we regard it as repugnant to the principles of the representative form of government by our Constitution. Under our Constitution the principle of law making is that the laws are made by the people not directly, but by and through their chosen representatives. By the Act under consideration, this principle is subverted and the law is proposed to be made at last by the popular vote of the people, leading inevitably to what was intended to be avoided—confusion and great popular excitement in the enactment of laws."

It is equally certain that the people can not be reinvested by the Legislature with the functions of legislation conferred by them on a department of government, nor can the Legislature render the enactment of a law dependent upon the acceptance by the people by popular vote. See cases already cited. Ex parte Wall, 48 Cal., 279; 8 Iowa, 82; 2 Iowa, 165; 9 Iowa, 203; 45 Mo., 458; 5 Nev., 283; 1 Ohio St., 77.

This inability arises no less from the joint principle applicable to every delegated authority requiring knowledge, discretion and rectitude in its exercise than from the positive provisions of the Constitution itself. The people in whom the power resided have voluntarily transferred its exercise and have positively ordained that it shall be invested in the Legislature. To allow the Legislature to cast it back on the people would be a subversion of the Constitution, and would change its distribution of power without the action or consent of those who created the Constitution. See Cincinnati, etc., v. Clinton County, 1 Ohio St., 77. Locke's Appeal, 72 Penn. St., 491, is authority for the clearly stated proposition, that if the Legislature can delegate the law making to a majority of the voters, it can as well confer such power upon the minority. This doctrine would inevitably lead to the conclusion that the Legislature has as much authority to refer such question to a single individual as to the whole people. If the power to refer is conceded, the number to whom re-

ferred would make but little or no difference. At least, it would but resolve itself into a question of legislative policy. There is to be noted, however, a real or an apparent exception to this rule or doctrine. However, when correctly viewed, if it is an exception, it is an innovation on the general principle which serves to emphasize and accentuate the truths of the main doctrine announced. This apparent exception is an innovation always to be found in the Constitution itself and notably in those provisions of that instrument which relate to local option laws in regard to the sale of intoxicating liquors and preventing stock running at large. Where this is the case the referendum is the only rule of final enactment. The people under such exception by majority adopt or vitalize a legislative Act in the territory to be affected. Unless expressly authorized so to do these laws can not be enacted. Swisher v. State, supra, and cases already cited. Referring to the people for their approval the matters provided in such exceptions serves to emphasize the fact that in no other contingencies can such referendum be had. These exceptions manifest the correctness, certainty and exactness of the general rule that the laws must be enacted by the Legislature. This doctrine also flows from the very framework of our form of government. It is the basic principle and theory of republican form of government as set out in the Constitution, and right here it may be observed that there is a wide distinction to be noted between the "right of petition and remonstrance," provided for in the Bill of Rights, and the referring to a vote of the people the enactment of laws. Ours is a government of a division and distribution of powers and authority. Ours is also a representative democracy, that is, it is republican in form of government as contra-distinguished from a social or pure democracy on one hand, and a government by the minority on the other, and excludes all others save and except one by the people through their selected representatives. The transfer of the enactment of laws to the people to be made operative by their votes is, therefore, directly subversive of our constitutional form of government, and can only be upheld when expressly authorized by some provision to be found in the Constitution itself.

Article 1, section 2, of the Bill of Rights, prohibits any change in our ordained form of government, even by the people themselves, which would be destructive of a republican form of government, and they expressly there reserve to themselves the "inalienable right" and authority to alter, change or abolish such ordained form of government. Therefore, not only was there no power granted to the Legislature to in any manner change the form of government, but it is expressly withheld and retained by the people in themselves exclusively. One of the most dangerous, if not fatal, propositions to our form of government is that the legislative department may "change from an immediate state of procuration and delegation of power to a course of acting as from original power." This, it has been said,

"is the way in which all magistracies have been perverted from their purpose." Any change by any department of government from that ordained in the Constitution is a pure assumption of power in conflict with and directly subversive of the Constitution. If the Legislature may authorize referendum, then the result of such referendum would or could suspend legislative Acts or even the Constitution itself. This is not to be entertained. The Legislature only may suspend laws by virtue of article 1, section 28, of the Constitution, but it can not suspend the Constitution, nor can it authorize any other department of the government—municipal or State—to suspend any law. Any attempt to authorize a municipal body to suspend a law would be in plain derogation of said section 28. To hold that a law could be suspended by the referendum or enacted by the referendum, would or might easily result in the deprivation of our citizenship of life, liberty or property without due process of law. The ordinance in question may be a fair illustration and verification of that statement. Such a proceeding would condemn without charges or specifications, without a hearing, or the forms of a trial, in the absence of evidence, without a jury and even without a court, to be exercised only by the secret inquisition of the ballot box. The referendum not only sets at defiance these constitutional guarantees, but it as well destroys the purpose and authority of the legislative department; or, on the other hand, may make that body omnipotent and superior to the Constitution from which its authority is derived. It would reinvest the people with the functions of legislation conferred upon that department of government. It is also a direct attack upon the judicial system provided by the Constitution. The courts were ordained for the purpose of the trial of causes, awarding to the citizenship tribunals in which their matters may be tried and adjusted. Referendum refuses a hearing. It takes the place of the constituted judiciary and tries the rights of property through the ballot box. By this means every officer in the State from Governor to constable, may be ousted from office and declared incompetent, or corrupt, without charges, evidence or trial. The property of the citizen may be confiscated, and he made a bankrupt without a hearing and without due process of law. Successful revolt from a monarchical form of government eliminated the idea of minority rule, and the provisions of the constitutional form of government discarded the idea of a pure democracy and rejected it as vicious. These matters were all discussed at the inception of the government and fully decided. The referendum, therefore, is wrong, first, as being directly subversive of the principles of republican government; second, violative of the Constitution itself and not to be entertained, unless expressly provided in the Constitution; and, third, its most insidious and far-reaching danger may be found in the fact that it is made to begin at the bottom of our framework of government in the small divisions, and thence will undermine the entire fabric. It is in the small divisions of territory and their local

governments that we expect to find the sentiment of our people, as a rule, formed and crystallized into definite shape, and it is there the most dangerous and insidious attacks are engendered and made on existing plans of government. The consequences of constantly or oft-recurring local elections incident to the referendum plan, should be avoided as most dangerous. They engender unnecessary strife and bitterness, bring confusion which destroys the peace of the community, and this generally without hope of corresponding good results. They have the tendency to bring disgust with existing conditions which sooner or later may and probably will end in or produce the occasion for a movement to substitute for the present form of representative government a much stronger one to be dominated by a minority rule at the hands of a select few or even a single individual. What has been said may also be said as to the baneful effect the referendum would have in its destructive influence on local self-government. Local self-government is that and that only which is provided or authorized by the Constitution, is to be found in the delegation of authority, is based on the idea of representative government, and can not under any circumstances under our Constitution be a pure democracy. All government with us finds its initial source in the Constitution—not outside of it—and any government that is in contravention or subversive of the Constitution is necessarily vicious and void. Our municipal government is to be upheld in consonance and conformity with the general plan of government and in harmony with it. If what has been stated is correct, then the ordinance in question is void. It deprives those whom it affects of their constitutional rights, and their rights as citizens to be heard when their property is sought to be taken or hampered with such rates and charges as would prove destructive. Any law, State or municipal, which would undertake to deprive a man of his life, liberty or property without giving him a hearing, or in any matter affect his rights without a hearing, would necessarily be vicious and unconstitutional. Ours is a country of law, and whenever a man is affected in his life, liberty or property, he has the right to resort to some legal tribunal where those matters can be honestly and fairly adjudicated.

The ordinance being void, it is ordered that applicant be discharged from custody.

*Relator discharged.*