

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXXXXXXXXX
ATTORNEY GENERAL

April 17, 1939

Hon. W. Lee O'Daniel
Governor of Texas
Austin, Texas

Dear Sir:

Opinion No. O-639
Re: Constitutionality of House
Bill No. 194

By your letter of April 13, 1939, you ask the opinion of this
Department as to the constitutionality of House Bill No. 194,
popularly known as the Barbers Bill, posing the following questions
for our determination:

"1. It has been suggested to me that the Legislature of the
State of Texas has been given no power by the Constitution
under which it may pass a law with the provisions above re-
ferred to and which are specifically set out in the attached
Bill. Will you please advise me whether or not the Legisla-
ture has power to pass such an Act.

"2. Is the Act, or any part of it, in conflict with Section
10, Article 1, Constitution of the United States, forbidding
the impairment of contracts?

"3. Is the Bill, or any part of it, in conflict with the exis-
ting laws referred to in Section 17 of the Act.?"

Our investigation has first been directed to the broad question
of the constitutionality of the bill with the provisions contained
therein, as posed in your first question.

Section 2 of the Bill provides as follows:

"Whenever a scale of minimum prices for barber services shall have
been agreed upon, signed, and submitted to the State Board of
Barber Examiners by organized and representative groups of bar-
bers of at least eighty-five (85) per cent of the licensed bar-
bers in any county of this State, the State Board of Barber Exam-
iners shall have power to approve or disapprove such agreements and
to declare and establish within such county, by official order,
the minimum prices for any and all work or services usually per-
formed in barber shops."

Section 3 of the Bill provides that the orders of the Board approving the schedule of prices in a particular county shall remain in force until rescinded or modified by the Board. Section 3a provides that the minimum price set by the Board shall not exceed forty (40¢) cents per haircut. Section 4 gives the Board the authority to adopt and enforce rules necessary to carry out the provisions of the Act, and provides for the posting of such orders, and for notice thereof to be mailed to barber shops affected by the rule or order. Section 5 provides exemptions within certain limits. Section 6 provides that the practice and procedure of the Board with respect to an investigation authorized by the Act shall be in accord with the regulations promulgated by the Board, which regulations must provide for reasonable notice to all persons affected by orders to be made by the Board, and for public hearing. This section also gives the Board certain powers with respect to such hearings, which are not necessary to be considered in connection with this opinion. Section 7 gives the Board the power to bring injunction suits to restrain violations of the law or an order of the Board.

Section 8 vests in the Board general powers necessary for administering and enforcing the Act. Section 9 provides the persons to whom the act shall apply, with certain exemptions, within prescribed limits. Section 10 prescribes the punishment for violation of provisions of the Act or rules or orders of the Board.

Sections 11, 12, 13, 14, 15, 16, 17, and 18 enact provisions not necessary to be considered in connection with this opinion.

A careful examination of the Act as a whole reveals that Section 2 thereof confers upon the State Board of Barber Examiners an unbridled and arbitrary discretion to approve or disapprove agreements submitted by the barbers of any particular county of the State. No standards are laid down by the Act. There is no definition of the circumstances and conditions under which the approval of the Board to an agreement is to be allowed or withheld. No finding of any character to the facts upon which the approval or disapproval of the Board is based is anywhere in the Act required as a condition precedent to its action. So far as the entire Act is concerned, it gives to the Board an unlimited authority to approve or disapprove the agreements as it may see fit. The only limitation upon the authority of the Board is, that if it approves an agreement submitted by the barbers of a particular county, the minimum price for haircuts may not be set at exceeding forty (40¢) cents. And disobedience to the order of the Board is made a crime punishable by fine and/or imprisonment.

In other words, the effect of the entire Act is this: The barbers of a particular county may submit to the Board the character of agreement contemplated by Section 2 of the Act, and the Board

may approve such aggreement and declare and establish within such
county by official order, the minimum prices for any and all work
or services usually performed in barber shops. The barbers of
another and different county may then submit to the Board an iden-
tical agreement, and the circumstances surrounding the making
of such agreement in the second county may be identical to those
existing in the first, and all economic conditions and other con-
ditions affecting such agreement, and the necessity or advisability
of fixing minimum prices may exist in like and identical degrees
in the second county as in the first, yet, nevertheless, the
Board, by authority of the Act, may withhold its approval of the
agreement submitted by the barbers of the second county.

Under our system of government, the exclusive authority to enact
laws is vested by the Constitution in the Legislature. The Legis-
lature is not permitted to delegate that power. Smith v. Swisher,
17 Texas 441. The effect of Section 2 of the Act under considera-
tion is to vest legislative authority in the State Board of Bar-
ber Examiners, and the Act is, therefore, unconstitutional.
Paname Refining Co. vs. Ryan, 293 U.S. 446; Schecter vs. United
States, 295 U. S. 495. The Act, however, does more than vest
the Board with legislative authority. Its necessary effect is
to vest the Board with powers which the Legislature itself could
not constitutionally exercise. For example, adverting to the il-
lustration given above, if the barbers of two separate counties
where conditions were in all respects similar should at the same
time submit identical price-fixing agreements to the Board, the
Board could, by virtue of the broad discretion conferred upon it
by the Act, approve one agreement and arbitrarily reject the other.
This is a power which the Legislature itself cannot constitution-
ally exercise, for the Legislature cannot constitutionally create
an arbitrary classification thereby according one man or set of
men exclusive privileges not extended to other men similarly sit-
uated.

Section 3 of the Bill of Rights of the Texas Constitution provides:

> "All free men, when they form a social compact, have equal
> rights, and no man, or set of men, is entitled to exclusive
> separate public emoluments, or privileges, but in considera-
> tion of public services."

Even legislative classifications must rest upon logical distinc-
tions, and all within the class, under both the State and federal
constitutions, must be accorded the equal protection of the laws.

In reply to your first question, therefore, this department is con-
strained to hold that House Bill No. 194, for the reasons given
above, is unconstitutional.

In view of this holding, it becomes unnecessary to answer your second and third questions, or to render an opinion upon other questions of constitutionality suggested by a reading of the Act.

Respectfully yours

ATTORNEY GENERAL OF TEXAS

By      R.W. Fairchild
            Assistant

RWF:PBP:ml

APPROVED:

GERALD C. MANN

ATTORNEY GENERAL OF TEXAS