

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

GERALD C. MANN
XXWELLXWILSONXXXXXXX
ATTORNEY GENERAL

Honorable William J. Tucker
Executive Secretary
Game, Fish and Oyster Commission
Austin, Texas

Dear Sir:

Opinion No. O-3772
Re: Constitutionality of House
Bill No. 954, House Bill No.
826, and House Bill No. 855
of the 47th Legislature.

The questions which your letter of recent date propounds for our opinion, relating to House Bill No. 954, House Bill No. 826, and House Bill No 855, Acts of the 47th Legislature, may be briefly stated as follows:

(1) Touching each you ask if these acts, which are game and fish laws, are unconstitutional as in contravention of Section 56 and Section 57 of Article III of the Constitution of Texas.

(2) Pertaining to House Bill No. 826, you ask also if it is sufficiently definite and certain in its provisions.

(3) With reference to House Bill No. 855, you ask also if it is unconstitutional as an unlawful delegation of legislative authority.

House Bill No. 954 authorizes the unrestricted taking of dollared Peccary or Javelina in three counties, whereas by prior general law the taking of these animals is restricted to certain months and to a certain number.

House Bill No. 826 authorizes the taking of fish in one county by any method with more than two hooks, specifically referring to trotlines, whereas by prior law the use of trotlines in such county, as well as in other counties, was restricted.

House Bill No. 855 seeks to regulate the hunting of quail in one county by setting out four distinct and different regulations, none of which would become effective in the county until and unless adopted by a majority vote of the qualified voters of the county in an election called for such purpose. The violation of a regulation, after its adoption, was declared a misdemeanor.

Pertaining to the first question, you suggest that the constitutional authorization for the enactment of special laws for the preservation of the game and fish, in certain localities of this State, is lost to the Legislature if the particular law permits the taking of more game and fish than theretofore permitted by prior law.

Sections 56 and 57 of Article III of the Constitution of Texas, as pertinent, read as follows:

"Section 56. The Legislature shall not, except as otherwise provided in this Constitution pass any local or special law, authorizing:

".......

"And in all cases where a general law can be made applicable, no local or special law shall be enacted; provided, that nothing herein contained shall be construed to prohibit the Legislature from passing special laws for the preservation of the game and fish of this State in certain localities."

"Sec. 57. No local or special law shall be passed, unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published at least thirty days prior to the introduction into the Legislature of such bill and in the manner to be provided by law. The evidence of such notice having been published, shall be exhibited in the Legislature, before such act shall be passed."

In our opinion the provision "for the preservation of the game and fish of this State" is not restricted in its application to laws enacted by the Legislature which permit the taking of less game and fish than prior laws permitted to be taken. Presumably all statutory regulations are for the preservation of the game and fish of this State. Proper preservation and conservation may require at times greater restrictions than at other times. Clearly, it would seem, the framers of the Constitution intended that the Legislature should be authorized to regulate the taking of game and fish in Texas unhampered by the restrictions regarding local or special laws. Were this not so, once the Legislature has enacted a general game and fish law, or a law restrictive in certain particulars, it would thereby forfeit its privilege of relaxing these laws by subsequent special laws appertaining to certain localities. We do not believe this was the intent of the constitutional provisions before us.

You also raise the question of whether Section 57 of Article III, in its requirement of advance publication and notice, applies to game and fish laws.

In Stephensen v. Wood, 35 S.W. (2d) 794 (Galveston Court of Civil Appeals); 119 Tex. 564, 34 S.W. (2d) 246 (Com App.), this question was involved. The Court of Civil Appeals held, first, than an act of the Legislature for the protection of the fish of the State is not a "local" or "special" law, in the sense that such terms are used in Sections 56 and 57 of Article III of the Constitution. And, second, that by the last clause of Section 56 of Article III, the authority of the Legislature to pass such laws without the notice mentioned in Section 57 was specifically reserved.

The Act under consideration prohibited the taking of fish by means of seines, nets, etc. from the coastal waters of certain counties and did not operate in the coastal waters of other counties.

Judge Critz, now of the Supreme Court, writing for the Commission of Appeals in the case, did not allude to the second proposition, that is the question of advance publication or notice in relation to game and fish laws, but held as follows touching the "local" or "special" law question:

> "It seems to be contended by Stephenson that the instant law is local or special within the meaning of the above-quoted provisions of our State Constitution because its enforcement is restricted to a particular locality, and does not include all coastal waters. This contention is utterly untenable. It is the settled law in this state that a statute is not local or special within the meaning of sections 56 and 57 of article 3 of our state Constitution, even though its enforcement be restricted to a particular locality, if persons or things throughout the state are affected thereby, or if it operates upon a subject in which the people at large are interested. Clark v. Finley, 93 Tex. 171, 54 S.W. 343,345; Reed v. Rogan 94 Tex. 177, 59 S.W. 255, 257; Logan v. State, 54 Tex. Cr. R. 74, 111 S.W. 1028, 1029. The mere fact that the statute only operates in certain counties of the state does not make it a local or special law. Likewise the mere fact that this law only operates in the coastal waters of certain counties, and does not operate in the coastal waters of other counties, does not make it a local or special law.
> "......
> "Under the above authorities we hold that the act in question is a general and not a local or special law within the meaning of sections 56 and 57 of article 3 of our state Constitution. The statute operates upon a subject-matter in which

the people at large are interested; it applies with equal force to all persons everywhere; and the fact that it only operates in certain localities grows out of the subject-matter.  To say that the Legislature cannot enact laws to protect the fish along a certain part of the coast line of the state because such a law would be local or special would be to say that all such regualtions must apply to every part of the state.  A regulation protecting fish in the coastal waters which is made to apply to the entire state would be an idle and useless thing, as most of our counties have no coast line at all.  Also the protection of fish and their spawning grounds along any part or all of the coast line of the state is a matter of general public interest.  For the reasons stated, we hold this to be a general law."

See also Tuttle v. Wood, 35 S.W. (2d) 1061, 1065.

The doctrine of these cases is that the subject matter of game and fish laws is one in which the people at large are interested. They apply to people everywhere.  They are therefore not local or special laws, within the purview of the Constitution, notwithstanding their operation may be restricted to certain localities.  In consequence, Section 57 would have no application. And, as pointed out above, the Court of Civil Appeals in the Stephensen case declared its opinion to be that the Legislature could pass game and fish laws without the notice mentioned in Section 57, irrespective of the question of such constituting local or special laws.

It follows that it is our opinion that the Acts before us are not unconstitutional as in contravention of Sections 56 and 57 of Article 3 of the Constitution of Texas.

Particularly with reference to House Bill No. 826, you question its definiteness in certain particulars.  Sections 1 and e of this Act read as follows:

"Section 1.  It shall be lawful in the County of Blanco, Texas, to take or attempt to take any fish by any method, means, or device equipped with more than two (2) hooks, and specifically it shall be lawful to take or attempt to take any fish by the use of trotlines, from the waters of the Pedernales River in said County

"Sec. 3.  The fact that it is desirable and appropriate that the use of trotlines for the purpose of catching fish in the Pedernales River in Blanco County be permitted and made lawful creates an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and said Rule is suspended, and that this Act shall take effect and be in force from and after its passage, and it is so enacted."

That the Legislature is seeking to regulate with reference to methods or means of taking fish by hooks is apparent. The construction suggested by you that the Act would authorize the use of dynamite, seines, or nets, or other imaginable means, so long as there was attached thereto more than two hooks, is not within the terminology of the Act and would, in our opinion, be denied by the courts. It is common knowledge that in addition to trot-lines, more than two hooks may be employed on throw lines, pole lines or even by rod and reel. House Bill No. 826 was obviously intended to authorize these methods and only those which, as a reasonable matter, employ hooks to catch the fish.

It is our opinion that House Bill No. 826 is not void for want of definiteness in the particulars you have suggested.

House Bill No. 855 acts out four inconsistent regulations regarding the hunting of quail in Henderson County. It provides that neither of the first four sections of the Act, in which are embodied the four separate regulations, shall become effective until the qualified voters of the county, by a majority vote at an election held for such purpose, shall have voted therefor.

The question presented in whether this Act represents an unconstitutional delegation of legislative authority.

The early case of State v. Swisher, 17 Tex. 441, decided in the year 1856, involved the constitutionality of a law which referred to a vote of the people for its approval before becoming effective. The Act pertained to the sale of intoxicating liquors. It provided that the Governor should order an election in each county in the State to determine whether or not the sale of liquor in less quantities than one quart should be abolished or continued. In declaring this Act unconstitutional, the court said at pages 448,449:

> "But, besides the fact that the Constitution does not provide for such reference to the voters to give validity to the Acts of the Legislature, we regard it as repugnant to the principles of the representative government formed by our Constitution. Under our Constitution, the principle of law-making is, that laws are made by the people, not directly, but by and through their chosen representatives. By the Act under consideration, this principle is subverted, and the law is proposed to be made at last by the popular vote of the people, leading inevitably to what was intended to be avoided, confusion and great popular excitement in the enactment of laws."

The cases of Ex parte Francis, 165 S.W. 147; Ex parte Mitchell, 109 Tex. 11, 177 S.W. 953; and Lyle v. State, 193 S.W. 680,

involved Chapter 74 of the Acts of the 33rd Legislature.  This Act authorized the qualified voters of a county or certain political subdivisions thereof, to determine by an election whether pool halls should be prohibited therein, and made it an offense to operate pool halls in such counties if the results of the elections were in favor of their prohibition.

In the first case cited the Court of Criminal Appeals of Texas held this Act constitutional as being a lawful delegation of legislative authority.  In the second case the Supreme Court of Texas held the Act unconstitutional upon the authority  of State v. Swisher, supra.  Finally, in the third case cited the Court of Criminal Appeals receded from its view in Ex parte Francis and held the Act unconstitutional consistent with the opinion of the Supreme Court in Ex parte Mitchell.

Chief Justice Cureton, in Trimmier v. Carlton, 116 Tex. 572, 591, 592, analyzed the authorities upon this question as follows:

"The authorities also hold that while the Legislature may not delegate its power to make a law, it may enact a law to become operative upon a certain contingency or future event: As for example, a vote of the people to be affected thereby. 6 Ruling Case Law, p. 166, Sec. 167.

"This rule is not to be understood as applying under all conditions in this State.  Ex Parte Farnsworth, 135 S.W., 535; Ex Parte Mitchell, 177 S.W., 953; State v. Swisher, 17 Texas, 441.  Generally it applies to matters of local concern.  6 Ruling Case Law, pp. 166 and 167.  Under the Constitution of this State there have been delegations of legislative authority concerning matters of local interest.  The location of a county seat may be made contingent on a vote of the people. Walker v. Tarrant Co., 20 Texas, 16.  The office of public weigher in any subdivision of a county may be abolished by vote of the people at an election ordered upon initiatory petition.  Vernon's Anno. Texas Stats., Art. 5686.  The case of Stanfield v. State, 83 Texas, 317, illustrates the principle.  In that case this Court had before it an Act of 1889, in part reading: 'The county commissioners court of any county in this State shall have the power and authority, when in their judgement such court may deem it advisable, to abolish the office of County Superintendent in said county by an order on the minutes of said court at a regular term.' This Court held that this Act was constitutional, and was not a delegation of legislative power, saying:

"'It has been said by this court in a general way that laws can only be made by the votes of the representatives of the people in their legislative capacity.  The State v. Swisher, 17 Texas, 448.'"

6 Ruling Case Law, page 166, Sec. 167, cited by Justice Cureton, contains the following:

"Accordingly, while the legislature may not delegate its power to make a law, it may make a law to become operative on the happening of a certain contingency or future event; and it makes no essential difference what is the nature of the contingency, if it be an essentially just and legal one. Such a contingency may be the vote of the electors of a given territory within which the law is to operate, as in the case of local option laws relating to the sale of intoxicating liquors, or miscellaneous local option matters such as laws relating to the running at large of animals, the establishment of free schools, and the creation or amendment of municipal charters. In some jurisdictions, however, statutes referring matters to the vote of the people are treated as amounting to a delegation to them of legislative power and therefore unconstitutional; and, likewise, statutes requiring the vote of subdivisions of the state have also been held invalid as violating constitutional provisions that no law shall be enacted to take effect upon the approval of any other authority than the general assembly. A distinction is made between matters of general and those of local concern, and local and not general laws may be enacted subject to the approval of voters of a particular portion of the state...."

From these authorities there emerges the proposition, insofar as the question at hand is concerned, that the Legislature may constitutionally enact a law to become operative upon a vote of the people to be effected thereby only if the matter is one of local concern. Adverting then to the concept of game and fish laws as pronounced by Judge Critz in the Stephensen case, namely, that they are not local or special laws but on the contrary operate upon a subject matter in which the people at large are interested, we conclude that House Bill No. 855 is unconstitutional in that it represents an unlawful delegation of legislative authority. This conclusion likewise comports with the doctrine of State v. Swisher, supra, together with the line of cases cited appertaining to Chapter 74 of the Acts of the 33rd Legislature. See also Johnson v. Martin 75 Tex. 33.

We thank you for your able and interesting discussion of the questions presented by your request and trust that we have satisfactorily answered them for you.

APPROVED AUG. 4, 1941
   Grover Sellers
FIRST ASSISTANT
ATTORNEY GENERAL

Very truly yours

ATTORNEY GENERAL OF TEXAS

By    Zollie C. Steakley
        Assistant

ZCS:RS:ml